BURFORD MANOR, INC., Appellee,

v.

Homer Richard DEEL, as Personal Representative of the Estate of Homer Deel, Deceased; Homer Richard Deel and Mary Jean Deel as Trustees of the Testamentary Trust Created by the Last Will and Testament of Homer Deel, Deceased; and Homer Richard Deel, as Personal Representative of the Estate of Lela Deel, Deceased, Appellants.

No. 80437.

Court of Appeals of Oklahoma,
Division No. 4.

April 26, 1994.

Certiorari Denied June 22, 1994.

Bill Chaffin, Davis, for appellee.

Stephen D. Colbert, Colbert Colbert & Milor, Ardmore, for appellants.

BRIGHTMIRE, Chief Judge.

The dispositive issue in this controversy is whether an unresolved material issue of fact exists which renders the summary judgment entered in favor of the plaintiff nursing home erroneous.

We conclude there is not and affirm the judgment.

## I

Burford Manor, Inc., a nursing home in Murray County, Oklahoma, filed this action October 10, 1989, against Homer R. Deel, as personal representative of the estate of Homer R.'s father, Homer Deel, and against Homer R. and his wife, Mary J. Deel, as co-trustees of a testamentary trust set up for the benefit of Homer R.'s mother, Lela, in a will executed by the elder Homer after his wife Lela entered the plaintiff nursing home in November 1983. Burford Manor sought to recover the sum of $18,316.90 for Lela's care said to have been rendered after the death of her husband, Homer, in 1987 and, of course, prior to her death in January 1990.

In their answer, the defendants admitted Homer R.'s status as the estate representative and the Deels' status as trustees of the testamentary trust, but sought dismissal of the plaintiff's lawsuit on the grounds that: (1) The estate was "in no way obligated for the support of (sic) maintenance of Lela Deel;" (2) no trust existed and could not until the estate is distributed; and (3) the plaintiff's allegations fail to state a claim for the relief requested.

The defendants contended that neither the estate nor the trust was liable for Lela's nursing home care because: (1) Homer's estate was still being probated; (2) the testamentary trust had never been set up; (3) the defendants have no authority to pay the plaintiff either as trustees or estate representatives; (4) the trust is a spendthrift trust; and (5) the trust has no income and its principal may not used for the beneficiary's nursing home care.

The trial court rejected the defendants' motion to dismiss and the plaintiff moved for a summary judgment. Attached to the motion was an affidavit of a Marsha Burford. In it she identified herself as "a duly authorized agent of B[urford] M[anor], I[nc.]," who was acquainted with its files and records including those related to the account of the late Lela Deel. The affiant went on to state that Lela Deel entered the plaintiff nursing home in November 1983 and lived there until her death on January 13, 1990. She further stated that following the senior Homer's death, Homer R. was appointed personal rep-

resentative of Homer's estate and, along with Mary J. Deel, began performing the duties of testamentary co-trustees. During this time, the affiant continued, they kept Lela in the plaintiff nursing facility, "contracted for her care," and paid for it from the date of Homer's death until the end of April 1988. And, though the defendants left Lela in the plaintiff's care and promised to pay for such services, they have made no further payments. Consequently, said the affiant, at the time of Lela's death there was an unpaid balance of $18,316.90 due for Lela's care.

A few days later, the defendants also filed a motion for a summary judgment, an affidavit, and a response to the plaintiff's motion. In their affidavit, the defendants admitted their official positions with respect to Homer's estate and the trust, but stated that there "has been no income from the real property which is the only asset of the trust or Homer Deel's estate"; that they as individuals "are not indebted to Burford Manor, Inc., in the sum of $18,316.90"; that "no promises" had been made by either of them to pay the plaintiff "for Lela Deel"; and that neither defendant ever "agreed to keep or maintain nor contracted for the care of Lela Deel."

After giving the parties an opportunity to submit briefs, the trial court signed and filed a Journal Entry of Judgment on August 21, 1992, in which the plaintiff's motion was generally sustained, and the defendants' motion was overruled. The court concluded as a matter of law that the trust in question was not a spendthrift trust; rendered judgment for the plaintiff against *both Homer R. and Mary Jean Deel in their trust capacity, and against Homer R. as Personal Representative, in the amount of $18,316.90*; and ordered the defendants to pay the judgment within ten days or else "this Court will hear motions from creditors to discharge [the defendants] as Trustees of the Trust and ... H[omer] R[ichard] D[eel] as the personal representative of the Estate of Homer Deel, for failure to pay the judgment." The court further concluded that the judgment represented an indebtedness on an open account and awarded the plaintiff its costs, which included a reasonable attorney's fee, the

amount of which was to be determined at a later date. The court also ordered the parties to brief the question of whether defendant Homer R. Deel, as personal representative of Homer's estate, "had an affirmative duty to pay a widow's allowance for the benefit of Lela Deel...."

On October 16, 1992, the defendants filed an appeal of the August 21, 1992, judgment and an October 2, 1992, minute order granting an attorney's fee to the plaintiff.

Thereafter, on October 22, 1992, a second Journal Entry of Judgment was filed reciting that on October 2, 1992, the parties appeared in open court and announced that they agreed for the court to order the defendants in their official capacities to pay the costs of the proceedings which included the plaintiff's attorney's fee of $3,606. Then on December 14, 1992, a third Journal Entry of Judgment was filed reciting that on September 21, 1992, the court had sustained the plaintiff's motion for summary judgment—without vacating the August 21, 1992, judgment or even mentioning that it had been appealed.

In pursuit of a reversal, the defendants' brief presents what they refer to as two assignments of error.

## II

▮ The defendants' first assignment—that the trial court erred in granting a summary judgment against them as trustees of the testamentary trust—is without merit.

The argument is, in substance, that the corpus of a trust cannot be reached by judgment creditors of a trust beneficiary but only "income due or to accrue in the future to the beneficiary," citing 60 O.S.1991 § 175.25. And here, they say, the trust is judgment proof because its corpus consists only of some unproductive real property.

We disagree. The elder Homer's will provided for the establishment of a *cestui que trust* upon his death and he designated his surviving spouse, Lela, to be the *cestui que vie.* Under the terms of the will which set up the trust, the trustees were expressly

directed in Article III to distribute to the testator's spouse during her life:

"As much or all of the **principal** of the trust named for my spouse [Lela Trust] as the trustee from time to time believes desirable for the health, support in reasonable comfort, best interests and welfare of my spouse, considering all circumstances and factors deemed pertinent by the trustee; ...."[1]

The trust gave the trustees plenary powers to sell or mortgage the corpus of the trust if necessary to carry out the obligation Article III imposed on them which, among other things, certainly included the duty to see that Lela—who was by then incompetent—received proper round-the-clock care. Although in their affidavit the defendants swear that neither of them agreed or contracted with Burford Manor to pay for the care it was giving Lela, they do not deny that Lela resided in Burford Manor when they became trustees of the Lela trust in 1987; nor do they deny that they paid the plaintiff for Lela's care until 1988. And in neither their affidavit nor their pleadings do they express any dissatisfaction with the care Lela received at Burford Manor, or the charges it made; and neither do they say that they were prevented from moving Lela to a different care facility.

Under these circumstances, we are of the opinion that—assuming the trustees made no express agreement to pay for the care of Lela—the undisputed facts give rise to an implied covenant to pay. And the fact that the corpus of the trust may have run out of liquid assets in 1988 did not provide a legal excuse for failing to otherwise invade the corpus in order to pay a reasonable amount for the nursing home's continued care of Lela, as the late Homer Deel's testamentary trust directed them to do.

At this point it is necessary to discuss the legal effect of another aspect of the case—that the trust ended upon the death of the beneficiary, Lela, in January 1990. For it is written in 60 O.S.1991 § 175.49, that:

---

1. Emphasis added.

"When the purpose for which an express trust was created ceases, the estate of the trustee also ceases."

Historically what happened is that title to the elder Homer's property passed to the trustees of the Lela trust when he died in 1987. And then, at the death of Lela, title to the trust's real property passed to the legatees named in Homer's will encumbered, however, with an equitable lien for valid trust debts. These constituent circumstances give rise to a significant factor overshadowing the entire situation—one recognized by the trial court—that a cloud of conflicting interests hovered over both of the Lela trust trustees arising from the fact that they were to eventually receive whatever was not spent on Lela during her lifetime.

So, bearing this in mind, along with the fact that this proceeding involves subject matter of equitable cognizance, it is appropriate to examine certain equitable principles applicable to the circumstances presented. First and foremost is the doctrine of equitable liens founded on the maxim of equity which regards as done that which has been agreed to be, and ought to be, done. *Mullens v. Geo. C. Wright Lumber Co.*[2] The *Mullens* court cited with approval the holding in *Clark v. Armstrong & Murphy,*[3] that:

"[E]quitable liens, which do not depend on possession, are of two kinds, (1) those that may be implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and circumstances of their dealings, and (2) those that arise from a contract which shows an intention to charge some particular property with a debt or obligation."

The court further explained in *Guaranty Laundry Co. v. Lewis,*[4] that: "Equitable liens grow out of a duty or obligation on the part of the owner of property to make it answerable for a debt. *Jones on Liens*, 3rd Ed., § 28."[5]

 The undisputed material facts of this case are of such a nature that the principles of equity and fair dealing require us to hold that title to the corpus of the trust passed to the estate heirs subject to and impressed with an implied equitable lien in favor of the plaintiff creditor for the adjudicated balance owed to it for the care and necessities it furnished to Lela at the express or implied request of the defendant trustees, including the costs and attorney's fee assessed against them.

## III

The defendants' only other assignment of error is that the trial court erred in granting summary judgment against Homer R. as personal representative of the estate of Homer Deel, deceased.

In light of our disposition of the defendants' first assignment of error, it is unnecessary to examine this issue.[6]

**2.** 182 Okl. 355, 357, 77 P.2d 700, 702 (1938) Syl. 1.

**3.** 180 Okl. 514, 72 P.2d 362.

**4.** 184 Okl. 613, 614, 88 P.2d 893, 894 (1939).

**5.** *See also The Farm Credit Bank of Wichita v. Woodring*, 851 P.2d 532 (Okl.1993).

**6.** We have assumed the defendants refer to the judgment of August 21, 1992, and not the one filed December 14, 1992, because the latter "judgment" is void since there can be only one judgment in a given case, and the August judgment, which is the subject of this appeal, was never vacated. Secondly, if we were to assume the December judgment is valid, we still could not consider it because the defendants' petition in error was never amended to include it.

The only amendment of the petition in error is one made pursuant to the order of the supreme court issued October 22, 1992, directing the appellants in this and another unrelated case to file amended petitions in error "attaching as Exhibit A ... the orders [and judgments] of the district court that are the subjects of these appeals.... If the judgment or final order was not filed prior to the filing of the petition in error, the amended petition in error must be filed within thirty days of the filing of the judgment, or within thirty days of the order disposing of timely filed postjudgment motions. If the appeal is lodged from an order disposing of a postjudgment motion, the underlying judgment must also be attached.... In any event, the amended petition in error shall be filed not later than December 9, 1992."

The defendants filed an amended petition in error on November 12, 1992, and the Exhibit A attached to it included two documents: (1) "Findings of Fact and Conclusions of Law" filed in district court September 21, 1992, and (2) an order dated October 22, 1992, assessing costs,

## IV

The judgment appealed is therefore affirmed as modified and the attorney's fee order is sustained. The cause is remanded with instructions to proceed with foreclosure of the equitable lien.

TAYLOR, P.J., and STUBBLEFIELD, J., concur.

including an attorney's fee, against the defen-