1998 OK CIV APP 97

**Billie Rae RHEA, Petitioner,**

v.

**SOUTHWEST CUPID, Connecticut Indemnity Company, State Insurance Fund, and The Workers' Compensation Court, Respondents.**

**No. 90587.**

Court of Civil Appeals of Oklahoma, Division No. 4.

June 9, 1998.

Kathryn Burgy, J.L. Franks, Frasier, Frasier & Hickman, Tulsa, for Petitioner

Neil F. Layman, Whitten, Layman, MacKenzie, Padgett and Whitten, Tulsa, for Respondents Southwest and Connecticut Idemnity.

Brad Smith, Timothy P. Clancy, Stoops and Clancy, P.C., Tulsa, for Respondents Southwest and State Insurance Fund.

## OPINION

STUBBLEFIELD, P.J.

¶ 1  A claimant seeks review of an order awarding compensation for permanent partial disability and apportioning liability for medical treatment and compensation between successive insurers of employer. After a review of the record on appeal and applicable law, we affirm in part and reverse in part.

¶ 2  Claimant Billie Rae Rhea filed her amended Form 3 on April 25, 1997, alleging cumulative trauma resulting in carpal tunnel syndrome in both hands while working for Employer Southwest Cupid. She listed her last date of exposure as January 16, 1997.

¶ 3  Employer admitted that Claimant suffered an accidental injury, but its insurer, Connecticut Indemnity Company, sought to add the State Insurance Fund (SIF) as the insurer "on date of awareness." The trial court ordered SIF added as a party, specifically reserving Claimant's objections to the addition of the SIF.

¶ 4  The case was tried on the issue of permanent partial disability and continuing medical maintenance. After hearing, the trial court entered its order finding that Claimant had sustained a work-related injury to both hands, resulting in fifteen percent PPD to the right hand and thirteen percent to the left hand. The trial court calculated and awarded compensation for 48.80 weeks. Citing *Red Rock Mental Health v. Roberts,* 1997 OK 133, 940 P.2d 486, the trial court acknowledged that for injuries occurring prior to November 1, 1997, TTD was "not appor-

tionable nor was reimbursement proper between two employers or successive insurance carriers." However, the trial court, in regard to PPD and all other benefits, adopted the "reimbursement and/or apportionment" statement by Claimant's surgeon—sixty-seven percent liability for SIF and thirty-three percent liability for Connecticut Indemnity—and accepted *"the agreement of the insurance carriers."* (Emphasis added.) Based on that agreement, the trial court apportioned future liability between the two insurers and also directed SIF to reimburse Connecticut Indemnity for sixty-seven percent of TTD and reasonable and necessary medical expenses already incurred. Claimant appeals both the quantum of the award and the order directing apportionment between the insurers.

¶ 5  Claimant maintains that apportionment among insurance carriers is inappropriate, unsupported by statutory or decisional law and outside the jurisdiction of The Workers' Compensation Court. Claimant asserts that, because the Supreme Court has held that it is the claimant's burden to apportion for injury causation, allowing a court to apportion permanent partial impairment between insurance carriers will place the claimant in the difficult position of trying to apportion injury among a potentially very long list of carriers in instances of cumulative trauma/exposure injuries.

¶ 6  Indeed, Claimant does carry the burden of showing "causation" or the "burden of establishing the causal connection between injury and employment." *American Management Systems, Inc. v. Burns,* 1995 OK 58, ¶ 6, 903 P.2d 288, 291. However, no burden has been placed on Claimant with regard to apportionment of liability among employers and insurers. The case cited by Claimant, *Parks v. Kerr Glass,* 1994 OK CIV APP 68, ¶ 6, 880 P.2d 408, 411, involves a dispute between insurance carriers and does not address the issue of compensability.

¶ 7  The court in *Whitman v. Whitman,* 1964 OK 259, ¶ 6, 397 P.2d 664, 667, stated:

One who is not aggrieved by a lower court's decision, however erroneous, may not appeal therefrom. "A party aggrieved" is one whose pecuniary interest in the subject matter is directly and injuriously affected or whose right of property is either established or divested by the decision complained of.

*See also Pierson v. Canupp,* 1988 OK 47, ¶ 11 n. 8, 754 P.2d 548, 554 n. 8 (citations omitted). Here, Claimant has shown no direct or pecuniary interest in the portion of the litigation relative to apportionment between insurers. Her award is the same, no matter which entity pays the award. Therefore, she has no basis for an appeal on this issue. Accordingly, just as the did the court in *Parks,* we decline to consider the merits of Claimant's contention regarding apportionment of liability between two insurance carriers. 1994 OK CIV APP 66, ¶ 14, 880 P.2d at 411.

¶ 8    Claimant next raises a proposition of error, which we find has more merit. She maintains that the trial court erred in applying 85 O.S.Supp.1996 § 22(3)(b), separately to each award for injury to her hands where both injuries arose out of the same injury-producing cumulative trauma, accrued on the same day and were adjudicated at the same time.

█ ¶ 9    First, we reject Connecticut Indemnity's assertion that the any-competent-evidence test is applicable to this issue. The dispute is not one of fact because Claimant does not dispute the degree of impairment found by the trial court. However, she maintains that the trial court incorrectly applied the statute regarding calculation of an award. The court in *Oklahoma Petroleum Workers' Compensation Association v. Mid–Continent Casualty Co.,* 1994 OK CIV APP 107, ¶ 5, 887 P.2d 335, 337, established that where there are no disputed facts, a question of law is presented. It is well established that defining the law is the role of the appellate court;

thus, "it independently reviews questions of law." *Id.*

█ ¶ 10    Furthermore, we find erroneous SIF's reliance on *Bras v. Gibson,* 1974 OK 148, 529 P.2d 982, to support the contention that by accepting payment of the benefits pursuant to the trial court's order Claimant waived her right to appeal. The facts in *Bras* are clearly distinguishable. The *Bras* court was presented with whether a partner, having received a distributive share on the dissolution of a partnership, could cash a voucher and appeal from the judgment for which the voucher was intended to exonerate. The *Bras* court stated that a litigant "cannot accept the fruits of the trial court's order that accrue to him and at the same time maintain an appeal from all or parts of the order not to his benefit." *Id.* at ¶ 10, 529 P.2d at 984.

¶ 11    More appropriate law is that stated in *United Engines, Inc. v. McConnell Construction, Inc.,* 1980 OK 139, 641 P.2d 1101, in which the court held that an appeal is not barred where the appellant "does not argue that the amount awarded is not due and owed to them; rather, [it] argues that that amount and an additional amount should have been awarded." *Id.* at ¶ 16, 641 P.2d at 1105. That is precisely the position taken by Claimant herein. Thus, we shall review this legal issue.

█ ¶ 12    Claimant maintains that the trial court incorrectly applied section 22(3)(b), by treating each hand injury as a separate and distinct injury and reducing the compensation for each injury pursuant to the section.[1] Section 22(3)(b) provides:

With respect to injuries occurring after [November 4, 1994], in case of disability, partial in character but permanent in quality, the compensation shall be seventy percent (70%) of the employee's average weekly wages, and shall be paid to the employee for the period prescribed by the following schedule:

---

1.    While the calculations of the trial court are not set forth in its order, its award of 48.80 weeks compensation is obviously the result of applying section 22(3)(b) to each separate award. Compensation for loss of a hand (a scheduled member) is 200 weeks. Section 22(3)(a). Thus, the trial court's determination of section 22(3)(b) compensation was—[ (9% × 200 × .80) + (6% × 200) ] + [ (9% × 200 × .80) + (4% × 200) ] = [14.4 weeks + 12 weeks] + [14.4 weeks + 8 weeks]=48.80 weeks.

(1) For each percent of the first nine percent (9%) of disability, eighty percent (80%) of the number of weeks of compensation provided by law prior to [November 4, 1994];

(2) For each percent of the next eleven percent (11%) of disability, the identical number of weeks of compensation provided by law prior to [November 4, 1994];

(3) For each percent of the next thirty percent (30%) of disability, one hundred twenty percent (120%) of the number of weeks of compensation provided by law prior to [November 4, 1994]; and

(4) For each remaining percent of disability, the identical number of weeks of compensation provided by law prior to [November 4, 1994].

¶ 13 The issue of applying this section separately to individual injuries, accruing on the same day, has been addressed by the courts of this state. In the case of *Stice v. Douglas*, 1997 OK CIV APP 11, 935 P.2d 1195,[2] the trial court had awarded compensation pursuant to section 22(3)(b)(1), for multiple body parts and had taken under advisement the issue of impairment of an additional body part. When the trial court entered a second order with regard to the injured body part, it again applied section 22(3)(b)(1), with no regard to the previously adjudicated percentage of PPD. The *Stice* court held that the trial court erred in failing to consider the subsequently adjudicated PPD as a part of the single cumulative trauma injury. The *Stice* court's ruling required that all injuries resulting from cumulative trauma, which accrued on the same day, must be considered as one overall injury for application of section 22(3)(b).

¶ 14 In this case, just as in *Stice*, Claimant's identical injury-causing tasks resulted in cumulative trauma, which caused injury to more than one body part—both hands. In such an instance, the trial court must consider the awards together for purposes of application of section 22(3)(b). In order to properly apply the law to ascertain the total weeks of compensation benefits awardable to Claimant, subsections (3)(b)(1), (2) and (3)

must be applied *to the total percentage of impairment calculated for both hands*—twenty-eight percent impairment. Therefore, the calculation results in (1) benefits for the first nine percent of impairment calculated at 80 percent—(.09 × 200 × 80%) or 14.4 weeks; (2) benefits for the next eleven percent calculated at 100 percent—(.11 × 200) or 22 weeks; and, (3) benefits for the remaining eight percent calculated at 120 percent—(.08 × 200 × 120%) or 19.2 weeks. Thus, based on the correct application of section 22(3)(b), the total benefit award to Claimant for PPD to both hands should have been 55.6 weeks.

¶ 15 The trial court's application of section 22(3)(b)(1) and (2) separately with regard to the impairment of each hand is clearly contrary to law and must be reversed. The cause is remanded to the trial court with instructions to enter an award consistent with the holding of this court.

ORDER AFFIRMED IN PART AND REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

REIF, J., and RAPP, J., concur.

---

**2.** Likewise, this court in *McCarter v. Rainbow Baking Co.*, 1998 OK CIV APP 78, 964 P.2d 918 *cert. denied* (June 3, 1998), addressed the same

issue presented herein and concluded that the *Stice* court had correctly interpreted the statutory language of section 22(3)(b).