2003 OK CIV APP 57

**Kevin M. MANNING, Plaintiff/Appellee,**

v.

**STATE of Oklahoma ex rel. DEPART-MENT OF PUBLIC SAFETY, Defendant/Appellant.**

**No. 98,622.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 18, 2003.

Rehearing Denied March 17, 2003.

Certiorari Denied May 30, 2003.

Stephen G. Fabian, Jr., Fabian & Associates, Inc., P.C., Oklahoma City, OK, for Plaintiff/Appellee.

J. Robert Blakeburn, Oklahoma City, OK, for Defendant/Appellant.

Opinion By RONALD J. STUBBLEFIELD, Judge.

¶ 1 This is an appeal by the Department of Public Safety (DPS) from an order of the Trial Court reversing the revocation of the driver's license of Plaintiff, Kevin M. Manning. Based on our review, we affirm the Trial Court.

## FACTS AND PROCEDURAL BACKGROUND

¶2 The basic facts are not in dispute. Manning was arrested for driving under the influence of alcohol. After advisement of the implied consent law, he consented to take a breath test which registered over .08 percent. His driver's license was revoked. He requested an administrative hearing by DPS, and the revocation was sustained at the administrative level. Pursuant to 47 O.S.2001 § 755, Manning appealed to the district court.

¶3 At the Trial Court hearing, Manning challenged the test results based upon the contention that the test was performed using a breath analysis machine, a Guth Model 2100, which had not been approved by the Board of Tests for Alcohol and Drug Influence (hereafter Board of Tests or the Board). He pointed out that 47 O.S.2001 § 759(B) requires: "Collection and analysis of a person's blood, breath, saliva, or urine, to be considered valid and admissible in evidence ... shall have been performed in compliance with the rules and regulations adopted by [the Board].…" The Trial Court agreed with the argument and, after a hearing, set aside the revocation/suspension based on the conclusion that the Guth Model 2100 was not an approved device, which consequently invalidated the test results. DPS appeals.

## STANDARD OF REVIEW

¶4 On appeal from a district court order in an implied consent revocation case, this Court may not reverse or disturb the findings below unless the lower court's determinations are found to be erroneous as a matter of law or lacking sufficient evidentiary foundation. *Abdoo v. State ex rel. Dept. of Pub. Safety,* 1990 OK CIV APP 2, ¶11, 788 P.2d 1389, 1393.

¶5 The material facts presented here are not in dispute and therefore this case presents a question of law. *Thomas v. Burggraf Restoration,* 2001 OK CIV APP 110, ¶8, 31 P.3d 402, 404. The appellate court's role is to define the law; therefore, it independently reviews questions of law. *Rhea v.*

*Southwest Cupid,* 1998 OK CIV APP 97, ¶9, 969 P.2d 1000, 1002.

## DISCUSSION OF ISSUES

1. Did the Trial Court Have Authority to Address the "Approved Device" Issue?

¶6 DPS claims the Trial Court erred when it examined the issue of whether the testing device was an approved device, because doing so meant going outside the parameters of review mandated by 47 O.S.2001 § 754(F). We disagree, because a provision in that specific section provides that an issue is whether the "testing procedures were in accordance with the rules of the Board of Tests for Alcohol and Drug Influence." Furthermore, as we have pointed out above, section 759(B) of Title 47 (as well as section 752(H)) provides that collection and analysis of a person's breath, to be admissible as evidence, must have been administered or performed in accordance with the rules and regulations of the Board. The parties agree that one function of the Board of Tests is to approve breath-testing devices, and that there are rules which designate approved testing devices. Therefore, the issue of whether the machine used in this case was a properly approved device was within the parameters of review set' out in the implied consent statutes.

2. Was the Trial Court Correct in Concluding that the Guth 2100 was not a Properly Approved Device?

¶7 DPS also challenges the Trial Court's ruling that the breath testing machine in question was not a properly approved machine. It acknowledges that the Board had rules approving specific breath-test machines, but claims there was nothing to prevent the Board of Tests from approving other devices by resolution, and that amendment of the rules was not necessary.

¶8 The Board of Tests does have formal rules which approve various breath-test devices. At the time of Manning's test, the rules had not been amended to include the Guth Model 2100. However, DPS did present evidence which tended to show that the Board of Tests, at a regularly scheduled

meeting, approved the Guth Model 2100. DPS claims this was sufficient to render it an approved device. We conclude that the rules and regulations of the Board of Tests state otherwise.

¶ 9 The Rules of the Board are a part of the record. Rule 40:1–1–1 states:

> The rules of this Chapter have been adopted to comply with the provisions of the Administrative Procedures Act [APA], 75 O.S., Sections 302, 305, and 307. They concern *and control* the organization, powers, duties, operations, and procedures of the Board with respect to its administration, rule-making, individual proceedings, and other activities. (Emphasis added.)

Rule 40:1–1–4(a) also clearly specifies that "[i]n proposing, considering, adopting, amending, or repealing Rules and Regulations ... the Board shall act in full compliance with the Oklahoma Administrative Procedures Act...." Title 75 O.S. Supp.2002 § 303 of the APA deals with amendment of rules, and requires that prior to amendment or revocation of a rule, published notice and a hearing must be given.

¶ 10 Chapter 25 of the Rules of the Board of Tests specifically deals with "Apparatus, Devices, Equipment, and Materials." Rule 40:25–1–1 states the purpose of the chapter, and provides that the rules of the chapter "include designation by the Board of approved apparatus, devices, and materials for breath-alcohol analysis." Subsequent Rules 40:25–1–2 and 40:25–1–3 approve various devices, using the language "[the devices] are hereby approved...."

¶ 11 It is clear from review of these latter rules that they constitute the formal approval by the Board of specific testing devices. The rule of interpretation "expressio unius est exclusio alterius" also requires the conclusion that Rules 40:25–1–2 and 40:25–1–3 likewise exclude from approval all unnamed devices. Therefore, the approval of other devices would require an amendment to the rules.

¶ 12 Board of Tests Rule 40–1–1 specifies that amendment of the rules must be done by strict adherence to the procedures of the APA. That was not done in this instance; therefore, we must conclude that the Board's attempt to modify the clear language of the rules by resolution is violative of the APA, as well as the Board's own rules.

¶ 13 We reiterate that 47 O.S.2001 § 759 requires that collection and analysis of a person's breath, to be considered valid and admissible evidence, must be performed in compliance *with the rules and regulations adopted by the Board of Tests.* The rules of the Board specifically provide for designation by the Board of approved breath-testing devices *and specifically approve various devices,* but they do not approve the device which was used to test the breath of the Plaintiff. Under those circumstances, we can reach no other conclusion except that the test results in this case were not admissible.

¶ 14 We are sympathetic to the argument of DPS that the Board should not be burdened with the APA procedures regarding rule amendment every time it desires to approve an additional testing device. We agree that the process is cumbersome, but the Board's own rules require it. The rules are certainly capable of amendment to modify the procedures to provide for Board approval of testing devices by resolution and for the maintenance by Board of a list of all approved devices.

## CONCLUSION

¶ 15 Our review of the rules and regulations of the Board of Tests, as well as pertinent law, leads us to conclude that the testing device used in this instance was not approved by the Board of Tests according to its own rules and regulations, with the result being that the test was not admissible into evidence in this case. Accordingly, the judgment of the Trial Court must be affirmed.

¶ 16 AFFIRMED.

COLBERT, V.C.J., and TAYLOR, P.J., concur.