2004 OK CIV APP 68

**Ray A. WARD, Plaintiff/Appellant,**

v.

**The STATE of Oklahoma, ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellee.**

**No. 100,542.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 6, 2004.

Motion For Publication Granted Aug. 20, 2004.

Oliver W. Arbogast, Jr., Tulsa, OK, for Appellant.

Margaret C. Farish, Oklahoma City, OK, for Appellee.

Opinion by LARRY JOPLIN, Judge.

¶1 Plaintiff/Appellant Ray A. Ward (Ward) seeks review of the trial court's order sustaining the order of the State of Oklahoma, ex rel. Department of Public Safety (DPS) revoking Ward's driver's license. In this appeal, Ward complains (1) the breathalyzer used in the present case was not approved for use at the time of administration of his test, and (2) the officer's affidavit did not reflect a "properly completed" breath analysis record, circumstances fatal to the efficacy of the order revoking his driver's license.

¶2 On or about July 2, 2003, an Oklahoma Highway Patrol Trooper stopped the vehicle operated by Ward, and observing signs of intoxication, arrested Ward for operation of a motor vehicle while under the influence of an intoxicating substance. Ward consented to the administration of a breath test, the results of which revealed his blood-alcohol concentration of 0.11.

¶3 DPS issued an order revoking his driver's license. Ward sought administrative review. The administrative hearing officer affirmed. Ward then filed his Petition for Review in the trial court.

¶4 At hearing on the merits, the parties stipulated to "all of the issues of the hearing except for the probable cause which led to the arrest of Mr. Ward and the circumstances surrounding the deprivation period and the time of that." The trooper testified concerning the circumstances surrounding the stop and arrest of Ward,[1] and Ward's consent to breath testing. The trooper also testified that he observed Ward during a deprivation period of about 22 minutes prior to a properly administered breath test with an approved model of breathalyzer, an enhanced Intoxilyzer 5000–D, and that he properly completed the breath analysis report reflecting Ward's intoxication.

¶5 In support, DPS offered, and the trial court admitted without Ward's objection, the Officer's Affidavit (OA) completed by the trooper, a certified copy of Ward's driving

---

1. Particularly, the trooper stated that he observed the vehicle operated by Ward weave off the road; that he effected a stop of Ward's vehicle; that he thereafter observed Ward to exhibit signs of intoxication, including an odor of alcohol; that Ward admitted consumption of four beers; and that Ward failed one or more subsequently administered field sobriety tests.

record, the breathalyzer maintenance log, and a copy of OAC 40:30–1–3 (eff. July 11, 2003), reflecting the approved procedure for administration of a breath test with an enhanced Intoxilyzer 5000–D.

¶ 6 Ward pointed out that the OA reflected a pre-test deprivation period of less than the required fifteen minutes, and that the trooper had not "properly completed" the breath-alcohol analysis record portion of the OA in his own hand-writing, fatal to admission of and reliance on the OA as evidence in the case. The trooper explained that the enhanced Intoxilyzer 5000–D printed out the breath alcohol analysis record by itself, obviating the need for manual entry of the data, and that the 14–minute deprivation period recorded by the enhanced Intoxilyzer 5000–D in the present case did not accurately reflect the actually observed deprivation period of 22 minutes. On consideration of the argument, testimony and evidence, the trial court rejected Ward's challenges to the OA, and sustained DPS's order of revocation.

¶ 7 Ward filed a motion for new trial. Ward argued, first, that the *enhanced* Intoxilyzer 5000–D had not been approved for use by the Board of Tests for Alcohol and Drug Influence when he was breath-tested on July 2, 2003. Compare, OAC 40:30–1–3 (eff. June 1, 1993)[2]; with, OAC 40:30–1–3 (eff. July 11, 2003).[3] Ward secondly argued that the OA, Breath Alcohol Analysis Record, reflected a deprivation period of only 14 minutes, not the 15 minutes required by OAC 40:30–1–3(c)(1).[4] DPS responded, presenting evidence tending to show that the Intoxilyzer 5000–D operated identically to the *enhanced*

Intoxilyzer 5000–D in all relevant respects, except that the enhanced model printed out the breath test results and did not require the operator manually enter the results on the OA.

¶ 8 Upon consideration of the argument of both Ward and DPS, the trial court denied Ward's motion for new trial. Ward appeals, again challenging the breath test and report as fatally flawed and insufficient to support the order of revocation.

¶ 9 "Appeals from implied consent revocation orders are heard de novo in the district court, with the 'trial de novo' being a trial of the entire case anew, both on the law and on the facts." *Appeal of Dungan*, 1984 OK 21, ¶ 7, 681 P.2d 750, 752; *Matter of Braddy*, 1980 OK 44, ¶ 12, 611 P.2d 235, 237–238. On appeal from orders of the trial court on review of implied consent revocations, the appellate courts will not reverse or disturb the findings below "if there is any evidence, or any reasonable inference to be drawn therefrom, which tends to support [the lower court's] findings." *Smith v. State, ex rel. Dept. of Public Safety*, 1984 OK 16, ¶ 7, 680 P.2d 365, 368.

¶ 10 The Intoxilyzer 5000–D has been approved for use in this state for many years. See, OAC 40:25–1–2.[5] The rules for operation of the enhanced Intoxilyzer 5000–D are identical to the rules for operation of the standard Intoxilyzer 5000–D. Compare, OAC 40:30–1–3 (eff. June 1, 1993); with, OAC 40:30–1–3 (eff. July 11, 2003). On the evidence, the trial court concluded:

> carried out by the breath-alcohol analysis Operator or Supervisor or by any other qualified person . . . ."

2. This version of 40:30–1–3 is titled, "Breath-alcohol analysis with the Intoxilyzer Model 5000–D."

3. This version of 40:30–1–3 is titled, "Breath-alcohol analysis with the *enhanced* Intoxilyzer Model 5000–D." (Emphasis added.)

4. "Each such analysis [of a breath specimen] shall include the following steps: (1) Continuous observation of the subject whose breath is to be tested, for a period of at least fifteen (15) minutes prior to the collection of the first breath specimen, during which observation period the subject shall not have ingested alcohol or alcoholic beverages or any other substance, regurgitated, vomited, or smoked. Such observation may be

5. That section provides:

> Approved evidential breath-alcohol analyzers
> (a) The Model 900 and Model 900A Breathalyzer (manufactured by National Draeger, Inc., Pittsburgh, PA 15230 or its predecessors or successors) are hereby approved for analysis of alcohol in breath specimens.
> (b) The Model 5000–D Intoxilyzer (manufactured by CMI, Inc., Owensboro, KY 42301, or its successors) is hereby approved for analysis of alcohol in breath specimens and is designated as an automated analyzer.
> [Eff. 7–1–97]

The only difference between the new method and the old method for the Intoxilyzer 5000–D is a matter of reporting it. Before it was written down by the officer, now it's generated by the machine itself.

¶ 11 Ward adduced no evidence that the enhanced Intoxilyzer 5000–D performed otherwise than an accurate breath analysis, or that the results of his breath test were otherwise than accurately reported on the OA. OAC 40:25–1–2 lists the Intoxilyzer 5000–D as an approved breathalyzer without restriction, and the rules of operation of the Intoxilyzer 5000–D are identical in form and substance to the rules for operation of the enhanced Intoxilyzer 5000–D, the sole difference being the manner in which the results of the test are revealed. On the evidence of the identical operation of the standard and enhanced Intoxilyzer 5000–D, we are unwilling to hold, as a matter of law, that the results of Ward's breath test from the enhanced Intoxilyzer 5000–D are inadmissible and incompetent to support the order of revocation.

¶ 12 We are likewise unpersuaded that the breath test is tainted by a deprivation period of inadequate duration. The trooper testified that the enhanced Intoxilyzer 5000–D did not accurately report the actual "deprivation period" observed by him; that he began Ward's deprivation period at 10:40 p.m.; and that, according to the breath-alcohol analysis report printed by the enhanced Intoxilyzer 5000–D, he administered the breath test at 11:02 p.m., twenty-two minutes later.

¶ 13 The judgment of the trial court is unaffected by error of law and supported by competent evidence. The trial court did not abuse its discretion in denying Ward's motion for new trial. *Jones, Givens, Gotcher & Bogan, P.C. v. Berger*, 2002 OK 31, ¶ 5, 46 P.3d 698, 701. The order of the trial court is AFFIRMED.

HANSEN, J., and MITCHELL, P.J., concur.