2005 OK 83

Marland D. CHARLSON, Appellee,

v.

STATE of Oklahoma, ex rel., DE-
PARTMENT OF PUBLIC
SAFETY, Appellant.

No. 102,117.

Supreme Court of Oklahoma.

Nov. 15, 2005.

Donald H. Horn, Chickasha, OK, for appellee.

Kevin Lynn McClure, Oklahoma City, OK, for appellant.

## WINCHESTER, V.C.J.

¶1 The issue is whether an obvious scrivener's error of a rule found in the text of the Oklahoma Register is sufficient to invalidate the rule as promulgated by the agency, reviewed by the Legislature, and signed by the Governor. We hold that the error may be corrected by this Court and the rule, as promulgated, be declared valid.

¶2 This case is an appeal from the District Court in Grady County, where the trial judge sustained a demurrer to the evidence brought by Marland D. Charlson, the appellee in a driver's license revocation hearing pursuant to the Implied Consent Law.[1] Where a defendant demurs to the plaintiff's evidence,[2] and the demurrer is sustained by the trial court, the appellate court will accept as true all of the plaintiff's evidence and its reasonable inferences, and will disregard conflicting evidence favorable to the defendant. *Beshara v. Southern Nat. Bank,* 1996 OK 90, ¶15, 928 P.2d 280, 285. Accordingly, the facts are those presented by the State of Oklahoma, ex rel., Department of Public Safety, the appellant.

¶3 On September 26, 2004, about 3:00 a.m., a Blanchard, Oklahoma, police officer stopped Marland D. Charlson after the officer noticed that the pickup Marland was driving twice swerved from side to side within his lane and crossed into the oncoming traffic lane. After the stop, the officer approached it, smelled the odor of an intoxicating beverage coming from the vehicle and observed an open container of beer sitting in the console next to the driver.

¶4 He asked Charlson to exit the pickup, and when he did, the officer could smell alcohol on Charlson's breath. According to the officer's testimony, Charlson had red, watery eyes, slurred speech, and admitted he had been drinking. The officer arrested him and drove him to the Newcastle Police Station where Charlson took a breath test on an Intoxilyzer 5000D machine with an attached simulator designated as a Guth 2100. The intoxilyzer measures the amount of alcohol in the breath and the simulator serves to calibrate the intoxilyzer. The test results showed an alcohol concentration[3] of 0.08 grams of alcohol per 210 liters of breath. Such an alcohol concentration is sufficient for the arresting officer to seize the driver's

---

1. The Implied Consent Law is found in title 47, §§ 751–761.

2. 12 O.S.2001, § 577 provides in pertinent part: "Third. The party on whom rests the burden of the issues must first produce his evidence; after he has closed his evidence the adverse party may interpose and file a demurrer thereto, upon the ground that no cause of action or defense is proved. If the court shall sustain the demurrer, such judgment shall be rendered for the party demurring as the state of the pleadings or the proof shall demand. If the demurrer be overruled, the adverse party will then produce his evidence."

3. 2001 Okla.Sess.Laws, ch. 437, § 25, now codified as 47 O.S.Supp.2004, § 756, provides in pertinent part: "B. For purposes of this title, 'alcohol concentration' means grams of alcohol per one hundred (100) milliliters of blood if the blood was tested, or grams of alcohol per two hundred ten (210) liters of breath if the breath was tested."

license of the arrested person.[4]

¶5 During the hearing the Department of Public Safety presented evidence concerning promulgation of the rule by the Board of Tests for Alcohol and Drug Influence, which adopted the Guth 2100 as an approved breath simulator, and how a typographical error caused the model number to be altered when entered in the Oklahoma Registry. After hearing that testimony and examining the exhibits, the trial court stated in the record that there was sufficient evidence that the submitted agency rule had been properly approved, and that a scrivener's error was responsible for the change in model numbers in the Oklahoma Register, which left the legal issue of the effect of the error on the matter before the court.[5] The court announced that it did not have the authority to correct the scrivener's error; that the agency itself must go through that process.[6]

¶6 The trial court sustained the demurrer because the Guth 2100 is not named as one of the approved simulators in the Oklahoma Register, even though the rule approving the Guth 2100 had been properly promulgated by the Board of Tests for Alcohol and Drug Influence.

¶7 Title 47 O.S.Supp.2004, § 752(H) [7] and 47 O.S.Supp.2004, § 759(B) [8] require that tests for alcohol concentration be performed in compliance with the rules and regulations adopted by the Board. The rule in dispute was initially adopted as emergency rule 40:25–1–3 on June 4, 2003, and published by the Secretary of State. The rule listed five approved breath simulators. Number 4 reads "Alcoholic Breath Simulator, Model 210021, Guth Laboratories, Inc., Harrisburg, PA, or its predecessors or successors." On April 1, 2004, the Board adopted, through permanent rulemaking procedures, the same language and number as the emergency rule.

**4.** 2004 Okla.Sess.Laws, ch. 418, § 22, eff. July 1, 2004, now codified as 47 O.S.Supp.2004, § 754, provides in subsection A: "Any arrested person who is under twenty-one (21) years of age and has any measurable quantity of alcohol in the person's blood or breath, or any person twenty-one (21) years of age or older whose alcohol concentration is eight-hundredths (0.08) or more as shown by a breath test administered according to the provisions of this title, or any arrested person who has refused to submit to a breath or blood test, shall immediately surrender his or her driver license, permit or other evidence of driving privilege to the arresting law enforcement officer. The officer shall seize any driver license, permit, or other evidence of driving privilege surrendered by or found on the arrested person during a search."

**5.** "THE COURT: Well, let me see if I can just shorten this up a little bit. I think there's sufficient evidence before me that the emergency rule and the original submission submitted to the Legislature which ultimately was resolved by Governor Brad Henry, that the submitted agency rules were approved. And the Court is also going to take notice based on the exhibits that the submitted agency rules did set forth the Model 2100. And the Court is also going to recognize that the final promulgated rule, for whatever reason, scrivener's error, somehow eliminated the 2100. And I think that is just going to have to be a legal issue that I'm going to have to determine what the affect [sic] of that is and whether I have the ability to make a ruling it was scrivener's error and this should have read 2100." (Tr. 59)

**6.** (Tr. 76)

**7.** 2004 Okla.Sess.Laws, ch. 418, § 21, eff. July 2004. Subsection H provides: "Tests of blood or breath for the purpose of determining the alcohol concentration thereof, and tests of blood, saliva or urine for the purpose of determining the presence and concentration of any other intoxicating substance therein, under the provisions of this title, whether administered by or at the direction of a law enforcement officer or administered independently, at the option of the tested person, on the excess specimen of such person's blood, breath, saliva or urine, to be considered valid and admissible in evidence under the provisions of this title, shall have been administered or performed in accordance with the rules and regulations of the Board, or performed by a laboratory that is exempt from the Board rules pursuant to Section 759 of this title."

**8.** 2004 Okla.Sess.Laws, ch. 418, § 24, eff. July 2004. Subsection B provides: "Collection and analysis of a person's blood, breath, saliva or urine, to be considered valid and admissible in evidence, whether performed by or at the direction of a law enforcement officer or at the request of the tested person, shall have been performed in compliance with the rules adopted by the Board of Tests for Alcohol and Drug Influence and by an individual possessing a valid permit issued by the Board for this purpose or shall have been performed by a laboratory accredited in Toxicology by the American Society of Crime Laboratory Directors/Laboratory Accreditation Board (ASCLD/LAB) or accredited by the American Board of Forensic Toxicology (ABFT)."

The rule was submitted to the Governor on April 1, 2004, and approved on May 11, 2004, after the Legislature's acquiescence.

¶ 8 When the rule went to the publisher for inclusion in the Oklahoma Register, numbers 4 and 5 both read "Alcoholic Breath Simulator, Model 210021, Guth Laboratories, Inc., Harrisburg, PA, or its predecessors." Model 210021 was repeated twice and the word "successors" was omitted. Model 2100 is the successor of Model 210021, although both are functionally identical. Had the word "successors" not been omitted, the scrivener's error in number 5 would be irrelevant. Nevertheless, because numbers 4 and 5 are identical, a scrivener's error is apparent on the face of the published rule. The question is whether the error invalidates the rule as actually promulgated by the agency.

¶ 9 In *Scurto v. Le Blanc*, 191 La. 136, 184 So. 567 (1938), the Supreme Court of Louisiana considered a statute in which the word "unlawful" had been inadvertently substituted for "lawful." The statute declared that a party litigant may impeach the testimony given by his opponent on cross-examination, "in any unlawful way." The text was identical to a 1908 statute that it replaced, except for addition of the prefix "un" to the word "lawful." The Louisiana court took cognizance of the fact that the substitution was an accident and continued to read the law as it was· originally written. *Scurto*, 191 La. at 156, 184 So. at 574. This case serves to illustrate that a failure by the courts to recognize a scrivener's error and correct the error by judicial pronouncement may lead to absurd consequences.

¶ 10 "The same rules of construction apply to administrative rules and regulations as to statutes." *Dolese Bros. v. State ex rel. Oklahoma Tax Comm'n*, 2003 OK 4, ¶ 9, 64 P.3d 1093, 1098. The primary goal of statutory construction is to ascertain legisla-

tive intent. *George E. Failing Co. v. Watkins*, 2000 OK 76, ¶ 7, 14 P.3d 52, 56. A rule, like a statute, should be construed reasonably and sensibly in preference to construction which renders all, or a portion thereof, useless or permits absurd consequences. *Becknell v. State Industrial Ct.*, 1973 OK 90, ¶ 16, 512 P.2d 1180, 1183. Doubt about the meaning of a rule or statute may be resolved by reference to its history. *Lekan v. P & L Fire Protection Co.*, 1980 OK 56, ¶ 6, 609 P.2d 1289, 1292. In prior cases this Court has held that in the construction of statutes to determine legislative intent, the entire act may be considered, together with all other enactments on the same subject, and when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied to give the statute the force and effect intended. *Curtis v. Registered Dentists of Oklahoma*, 1943 OK 366, ¶ 6, 143 P.2d 427, 429.

¶ 11 Applying these rules, it cannot be contested that the rule adopted by the agency and approved by the Legislature and Governor included the Guth 2100 as an approved Alcohol Breath Simulator. It is not contested that a scrivener's error caused the number 210021 to be duplicated in the Oklahoma Register. Charlson argues that this error requires the administrative agency to go through the rulemaking process again to correct the error. Such is not the case. The rule was properly made and has the force of law. A scrivener's error cannot change the law. If a book publisher were to make a scrivener's error in an opinion of this Court, it would not change the efficacy of the opinion. If the company were to misprint a statute enacted by the Legislature, the law passed would not lose its effectiveness. To rule otherwise allows copyists employed by publishers to change the law.[9] That cannot be the case. Carlson's arguments to the contrary are not persuasive.[10]

---

9. A publisher of statutes has no authority to change the substantive meaning and application of a law or its purpose and intent. Any such change is ineffective and the law as originally enacted must be construed and applied to accomplish the original legislative intent and purpose. *Independent Finance Institute v. Clark*, 1999 OK 43, ¶ 20, n. 44, 990 P.2d 845, 854, n. 44.

10. *Manning v. State ex rel. Dept. of Public Safety*, 2003 OK CIV APP 57, 71 P.3d 527, and *McCown v. State ex rel. Dept. of Public Safety*, 2003 OK CIV APP 66, 74 P.3d 623, are distinguishable. In both those cases the Board of Tests for Alcohol and Drug Influence did not follow the usual rule-making procedures to approve the Guth 2100. *McCown*, 2003 OK CIV APP 66, ¶ 10, 74

¶ 12 Carlson argues that this Court cannot by its authority amend the rule because it would allow for the creation of law in secret, give the citizenry no notice of the existence of the law, and then enforce a violation of the secret law. This argument would have some persuasive effect if it commanded Carlson to comply with some rule of which he was unaware. He cannot persuasively argue that his choice to drink and drive was affected by whether or not the Guth 2100 simulator could be used to calibrate the intoxilyzer used to test him. The rule was made to tell the administrative agency, the Department of Public Safety, which simulators it could use. It correctly used an approved simulator. The fact that a misprint appeared in the Oklahoma Register does not change that. If a misprint in the statutes or the Administrative Code leads a citizen astray because he followed that statute or rule, that is another question to be answered at another time. That did not happen in this case.

¶ 13 Accordingly, we hold that the Guth 2100 was properly approved and that the Administrative Code be corrected to reflect the order of this Court. According to Plaintiff's Exhibit number 1, the Oklahoma Register was amended at 21 Ok Reg 2655, eff 7–11–04, which means it was effective the date of Carlson's arrest, September 26, 2004. The judgment of the district court is reversed and remanded.

JUDGMENT OF THE DISTRICT COURT REVERSED AND REMANDED.

CONCUR: LAVENDER, HARGRAVE, OPALA, KAUGER, EDMONDSON, TAYLOR, and COLBERT, JJ.

CONCUR IN RESULT: WATT, C.J.

P.3d at 626. The Board attempted to modify the language of the rules by resolution, in violation

of the Administrative Procedures Act. *Manning,* 2003 OK CIV APP 57, ¶ 12, 71 P.3d at 529.