2016 OK CIV APP 62

**Eric SAMPLE, Plaintiff/appellee,**

v.

**STATE of Oklahoma, EX REL. DEPARTMENT OF PUBLIC SAFETY, Defendant/appellant.**

**Case Number: 113871**

Court of Civil Appeals of Oklahoma, Division No. 3.

Decided: 01/29/2016

Mandate Issued: 10/20/2016

Brian K. Morton, Oklahoma City, Oklahoma, for Appellee,

Whitney Herzog Scimeca, Assistant General Counsel, Oklahoma Department of Public Safety, Oklahoma City, Oklahoma, for Appellant,

Kevin L. McClure, Assistant Attorney General, Oklahoma Attorney General's Office, Litigation Section, Oklahoma City, Oklahoma, for Amicus Curiae Oklahoma Board of Tests for Alcohol and Drug Influence.

Larry Joplin, Judge:

¶1 Defendant/Appellant State of Oklahoma, ex rel. Department of Public Safety (DPS), seeks review of an order of the trial court setting aside the revocation of the driver's license of Plaintiff/Appellee Eric Sample (Plaintiff) as based on an inadmissible breath test sample obtained with a gas cannister and mouthpiece improperly approved for use by a resolution of the *Amicus Curiae* Oklahoma Board of Tests for Alcohol and Drug Influence (BoT), and holding BoT could only grant such approval pursuant to administrative rules adopted in conformity with the Oklahoma Administrative Procedures Act, 75 O.S. 250, et seq. In this appeal, DPS asserts: (1) in the trial court, it adequately proved the breath test administered to Plaintiff was conducted in compliance with BoT rules; (2) the trial court ignored validly enacted administrative rules of the BoT authorizing the BoT to approve by resolution the use of particular devices and equipment for breath testing; (3) in this implied consent proceeding under 47 O.S. 751–762 and 47 O.S. 6–211, the trial court lacked jurisdiction to determine the validity of BoT rules and resolutions; (4) the validity of the BoT rules could only be challenged in a declaratory judgment action timely commenced within two years of the adoption of the challenged rule under 75 O.S. 308; and (5) BoT should have been joined as a party in the proceedings below and BoT

afforded the opportunity to defend its actions. The *Amicus Curiae* BoT likewise asserts in its brief (1) the trial court lacked jurisdiction to set aside BoT's rules, resolutions and actions in this implied consent proceeding under 47 O.S. 751–762 and 47 O.S. 6–211, (2) DPS proved in the trial court the administration of a valid breath test and an accurate test result pursuant to BoT rules, and (3) contrary to the trial court's conclusion, BoT validly approved by resolution the gas cannister used in the present case, and properly delegated authority to its Director to approve the mouthpiece used in the present case.

¶2 An Edmond Police Officer arrested Plaintiff on the charge of operation of a motor vehicle while under the influence of alcohol. Plaintiff consented to breath testing, which revealed blood/alcohol concentration of .28 gm/l, and the arresting officer served Plaintiff with a notice of the revocation of his driver's license. Upon administrative review, the order of revocation was sustained.

¶3 Plaintiff then petitioned for review in the trial court. Plaintiff argued DPS had failed to prove the proper administration of the breath test (1) using a sample containing the proper ratio of ethanol and nitrogen, and (2) the collection of Plaintiff's two breath samples using a new mouthpiece for each collection, both as required by BoT regulations, and necessary to sustain the revocation of his driver's license. DPS asserted it had sustained its burden of proving the administration of a valid breath test using a gas sample approved for use *by resolution* of the BoT, and using a single new and unused mouthpiece to collect Plaintiff's breath specimens as permitted by action of the BoT Director.

¶4 On consideration of the evidence and testimony, the trial court set aside the revocation of Plaintiff's driver's license. The trial court held that the BoT could not, by resolution, approve the use of any particular gas sample, that the Director of BoT could not, by administrative action, approve the use of any particular mouthpiece, and that such approvals could only be accomplished by adoption of rules pursuant to the Administrative Procedures Act:

There is no authority for the director approving some of the equipment by action and the Board of Tests approving some of the equipment by resolution. The Court notes that the Board approved some of the equipment by rule. [T]he practice of an agency further delegating its rule-making authority to another individual ... is prohibited. The director of the Board of Tests had no statutory or regulatory authority to approve equipment utilized in the breath tests administered using the I–8000 Intoxilyzer.

Therefore, because the Board of Tests did not have the ability to create substantive administrative policy by means of ad hoc board resolutions, the designation of ILMO as an approved pressured gas cylinder supplier is ineffective. The Court notes that if such a resolution were deemed to be effective as an agency rule-making procedure, this issue would be decided in favor of the Department. The action taken by the director of the Board of Tests approving mouthpieces is not supported by statute whatsoever, and that action must fail.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that the appeal herein by and hereby is SUSTAINED and that the revocation of the driving privileges of Eric Michael Sample by the Department of Public Safety is set aside and held for naught.

¶5 "To revoke a driver's license based upon a breath test result and a sworn report from a law enforcement officer, DPS bears the burden in the district court of proving by a preponderance of the evidence 'all facts necessary to sustain the revocation, including the operation/actual physical control of a motor vehicle while intoxicated, a valid arrest, proper advice of rights and consequences, as well as consent to and performance of a valid test on a properly maintained testing device.'" *Muratore v. State ex rel. Dept. of Public Safety*, 2014 OK 3, ¶5, 320 P.3d 1024, 1029. (Citations omitted.) "The District Court's review of a driver's license revocation is conducted de novo, 'with the "trial de novo" being a trial of the entire case anew, both on the law and on the facts.'" *Id.*

"'On appeal, we review the district court's order in an implied consent revocation to determine whether it lacks sufficient evidentiary foundation·or is erroneous as a matter of law.'" *Andrews v. State ex rel. Dept. of Public Safety*, 2014 OK CIV APP 19, ¶.12, 320 P.3d 27, 29. (Citations omitted.) The appellate courts have consistently recognized that, inasmuch as DPS must prove the performance of a valid test on a properly maintained testing device, BoT's compliance with its own rules and regulations governing the approval, operation and maintenance of devices used for breath testing is a matter of proper inquiry in an implied consent hearing.

1. "Without any rules governing the maintenance of the Intoxilyzer 8000, there is no way to verify the bench check procedure referred to by counsel for DPS is sufficient to ensure the proper maintenance of these machines or that the person who performed the bench check was in fact qualified to perform maintenance on an Intoxilyzer 8000. Additionally, according to Exhibit 6, an affirmation of a resolution by the Board of Tests dated June 12, 2008, the pressurized gas cylinder used as a reference method for the Intoxilyzer 8000 must contain 'a known breath-alcohol equivalent ratio of nitrogen and ethanol gas.' But without any rules governing the maintenance of the Intoxilyzer 8000, there is no way to verify, through the bench check procedure or otherwise, whether the attached pressurized gas cylinder contained the correct ratio of nitrogen to ethanol."

2. "Title 47 O.S. Supp. 2004, 752(H) and 47 O.S. Supp. 2004, 759(B) require that tests for alcohol concentration be performed in compliance with the rules and regulations adopted by the Board. The rule in dispute was initially adopted as emergency rule 40:25–1–3 on June 4, 2003, and published by the Secretary of State. The rule listed five approved breath simulators. Number 4 reads 'Alcoholic Breath Simulator, Model 210021, Guth Laboratories, Inc., Harrisburg, PA, or its predecessors or successors.' On April 1, 2004, the Board adopted, through permanent rulemaking procedures, the same language and number as the emergency rule. The rule was submitted to the Governor on April 1, 2004, and approved on May 11, 2004, after the Legislature's acquiescence." (Footnotes omitted.)

3. "Ward filed a motion for new trial. Ward argued, first, that the enhanced Intoxilyzer 5000–D had not been approved for use by the Board of Tests for Alcohol and Drug Influence when he was breath-tested on July 2, 2003. Compare, OAC 40:30–1–3 (eff. June 1, 1993) with OAC 40:30–1–3 (eff. July 11, 2003). Ward secondly argued that the OA, Breath Alcohol Analysis Record, reflected a deprivation period of only 14 minutes, not the 15 minutes required by OAC

*See, Muratore*, 2014 OK 3, ¶ 20, 320 P.3d at 1033–1034 [1]; *Charlson v. State ex rel. Dept. of Public Safety*, 2005 OK 83, ¶ 7, 125 P.3d 672, 674–675 [2]; *Ward v. State ex rel. Dept. of Public Safety*, 2004 OK CIV APP 68, ¶ 7,98 P.3d 362, 364 [3]; *McCown v. State ex rel. Department of Public Safety*, 2003 OK CIV APP 66, ¶ 10, 74 P.3d 623, 626 [4]; *Manning v. State ex rel. Dept. of Public Safety*, 2003 OK CIV APP 57, ¶ 10, 71 P.3d 527, 529.[5]

¶ 6 More particularly, the Court of Appeals held in *Manning* that the BoT rules and regulations do not permit the approval of devices or procedures by resolution, but rath-

40:30–1–3(c)(1). DPS responded, presenting evidence tending to show that the Intoxilyzer 5000–D operated identically to the enhanced Intoxilyzer 5000–D in all relevant respects, except that the enhanced model printed out the breath test results and did not require the operator manually enter the results on the OA." (Footnotes omitted.)

4. "With respect to the last exhibit, the simulator used during McCown's test is not one approved by the Board. The minutes of the meeting revealed that the Board approved a motion to approve the use of the simulator in question. The district court found that the simulator used did not appear in the Oklahoma Administrative Code as a device approved by the Board of Tests for Drug and Alcohol Influence and therefore the license revocation should be set aside. From the bench, the district court stated that the Board had approved the device but had failed to formalize its approval through the usual rule-making procedures. The law requires that admissibility of the breath test into evidence be based on the test being administered and performed in compliance with the rules and regulations of the Board. 47 O.S. Supp. 1992 752(H) and 47 O.S. Supp. 2000 759(B)." (Footnotes omitted.)

5. "The Rules of the Board are a part of the record. Rule 40:1–1–1 states: 'The rules of this Chapter have been adopted to comply with the provisions of the Administrative Procedures Act [APA], 75 O.S., Sections 302, 305, and 307. They concern and control the organization, powers, duties, operations, and procedures of the Board with respect to its administration, rule-making, individual proceedings, and other activities.' (Emphasis added.) Rule 40:1–1–4(a) also clearly specifies that '[i]n proposing, considering, adopting, amending, or repealing Rules and Regulations ∴.. the Board shall act in full compliance with the Oklahoma Administrative Procedures Act....' Title 75 O.S. Supp. 2002 303 of the APA deals with amendment of rules, and requires that prior to amendment or revocation of a rule, published notice and a hearing must be given." ...

er require the adoption of rules pursuant to the APA. 2003 OK CIV APP 57, ¶ 12, 71 P.3d at 529,[6] While the Court of Appeals in *Manning* suggested the BoT "rules are certainly capable of amendment to modify the procedures to provide for Board approval of testing devices by resolution," O.A.C. 40:1–1–1 recognizes the adoption of BoT rules in compliance with the APA and that BoT rules adopted pursuant to the APA "control the organization, powers, duties, operations, and procedures of the Board with respect to its administration, rule-making, individual proceedings, and other activities." Furthermore, 759(C) of title 47 authorizes the BoT to "adopt, amend and repeal ... rules" for the purposes of enforcement of the Oklahoma implied consent laws. To permit the BoT to circumvent its required rule-making in favor of regulation by resolution runs contrary the specific mandate of the O.A.C. 40:1–1–1 and the implicit direction of 759(C).

¶ 7 In the present case, DPS introduced evidence which showed that the BoT had, in fact, sought to approve the use of certain gas cylinders *by resolution,* and the use of a certain mouthpiece by administrative action of its Director. The trial court held that the BoT could not by resolution issue such approval, and could not delegate the authority to issue an approval by its Director. In these conclusions, we hold the trial court did not err.

¶ 8 Because DPS did not prove the performance of a valid breath test in accord with duly adopted BoT rules, the trial court set aside the revocation of Plaintiff's driver's license. The trial court did not err as a matter of law or fact. The order of the trial court is AFFIRMED.

MITCHELL, P.J., and HETHERINGTON, C.J., concur.

---

6. "Board of Tests Rule 40–1–1 specifies that amendment of the rules must be done by strict adherence to the procedures of the APA. That was not done in this instance; therefore, we must conclude that the Board's attempt to modify the clear language of the rules by resolution is violative of the APA, as well as the Board's' own rules."