OSCN Found Document:BAILEY v. STATE ex rel. BD. OF TESTS FOR ALCOHOL AND DRUG INFLUENCE

 

 
 

 
 BAILEY v. STATE ex rel. BD. OF TESTS FOR ALCOHOL AND DRUG INFLUENCE
2022 OK 50
Case Number: 118532
Decided: 05/24/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 50, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

COURTNEY BAILEY, KENNETH BAXTER, OSCAR BERNAL, KEVIN BUCKMASTER, EZEQUIEL CARDENAS-MEKIA, BENJAMIN CLEMENTS, CHANCE GIMLIN, ALEX HILL, MELANIE HUNTER, LANNETTE JORDAY, CORBIN LACEY, COLTON LIENTZ, TREVOR MCFARLAND, JOHNNY NEEDHAM, AMBER OSEI, REGIN PREM-AMAND, DONALD RILEY, DARIN SEEBECK, KALA VAN KIRK, and AUSTIN VASICEK, Plaintiffs/Appellees,
v.
STATE OF OKLAHOMA, ex rel., BOARD OF TESTS FOR ALCOHOL AND DRUG INFLUENCE, and KEVIN BEHRENS,
and
STATE OF OKLAHOMA, ex rel. DEPARTMENT OF PUBLIC SAFETY, RUSTY RHOADES, COMMISSIONER, Defendants/Appellants.
CERTIORARI TO THE OKLAHOMA COURT OF CIVIL APPEALS, DIVISION NO. I
Â¶0 Plaintiffs filed an action in the District Court challenging rules adopted by the Oklahoma Board of Tests for Alcohol and Drug Influence at one of its meetings. Those rules were subsequently used by the Oklahoma Department of Public Safety in actions to revoke the plaintiffs' driver's licenses. The Honorable Thomas E. Prince, District Judge, for the District Court of Oklahoma County, held an evidentiary hearing and concluded (1) the Board violated the Oklahoma Open Meeting Act and (2) rules adopted by the Board at its meeting were invalid. Defendants appealed and the Court of Civil Appeals concluded a willful violation of the Open Meeting Act did not occur and reversed the District Court. The plaintiffs filed a petition for certiorari to review the opinion by the Court of Civil Appeals. We previously granted certiorari. We hold: The evidence was insufficient to make a prima facie case that the Board's Director willfully violated the Open Meeting Act when he failed to send the email notice of the special meeting to the Secretary of State. 
CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF
CIVIL APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED;
AND CONTROVERSY REMANDED FOR ADDITIONAL PROCEEDINGS
Kevin L. McClure, Assistant Attorney General, Oklahoma Attorney General's Office, Oklahoma City, Oklahoma, for Defendants/Appellants.
Brian K. Morton, Oklahoma City, Oklahoma, for Plaintiffs/Appellees.
EDMONDSON, J.
Â¶1 The issue before us is whether the evidence was sufficient to show a prima facie case that an official committed a willful violation of the Open Meeting Act when he did not send a notice of a special meeting to the Secretary of State. We hold the evidence was insufficient to show a prima facie willful violation of a statute.
[1] The evidence showed a single event of an official's forgetfulness and omission when he sent an email notice to many individuals and failed to include the Secretary of State's address on the email, and additional evidence showed this omission was not a willful violation of the Act. We reverse the judgment of the District Court which found a violation of the Open Meeting Act by Oklahoma Board of Tests for Alcohol and Drug Influence. The District Court concluded this Board's emergency rules were invalid based upon the District Court's finding a violation of the Open Meeting Act, and that conclusion is also reversed.
I. Trial Court Controversy
Â¶2 Plaintiffs' petition in the District Court invoked a statute authorizing a declaratory judgment (
12 O.S. Â§ 1651), and two statutes in the Oklahoma Administrative Procedures Act (75 O.S. Â§Â§ 253, 306). The petition alleged the Oklahoma Department of Public Safety "would seek to admit the breath test results against Plaintiffs in implied consent driver's license revocations actions, based upon emergency rules promulgated by the BOT [Oklahoma Board of Tests for Alcohol and Drug Influence] . . . [and] application of these emergency rules threatens to impair Plaintiffs' driving privileges." Plaintiffs alleged they "have timely filed appeals of these revocations in District Courts throughout the state." Plaintiffs challenged rules governing alcohol testing equipment and procedure that were previously adopted by the Oklahoma Board of Tests for Alcohol and Drug Influence (the Board).
Â¶3 The challenged rules were adopted in response to a decision by the Court of Civil Appeals. In Sample v. State ex rel. Department of Public Safety, 2016 OK CIV APP 62, 382 P.3d 505, the Court of Civil Appeals affirmed a trial court's judgment which determined the Department of Public Safety (DPS) improperly revoked a driver's license. The DPS revocation was based upon alcohol breath test procedure and equipment which was approved by the Board, but the form of the Board's approval was not by promulgated administrative rules. Sample relied upon the then current version of 47 O.S. Â§ 759(C) which authorized the Board to adopt, amend and repeal administrative rules for enforcing Oklahoma implied consent laws. The Board held a Special Meeting on October 7, 2016, to promulgate Emergency Rules in response to the court's opinion in Sample, and these are the rules challenged by plaintiffs.
Â¶4 Plaintiffs argued the Board violated provisions in Oklahoma's Open Meeting Act (OMA),
[2] Oklahoma Administrative Procedures Act (OAPA),[3] and the Oklahoma Administrative Code (OAC). They alleged: (1) Notice of a meeting held by the Board on October 7, 2016, was not provided as required by 25 O.S.2011 Â§ 311 of the OMA; (2) The meeting did not satisfy the requirements of OAC 40:1-1-3 because the meeting was called by the Director of the Board without proper public notice; and (3) The emergency rules adopted by the Board for the purpose of amending then existent permanent rules were not properly promulgated pursuant to 75 O.S.Supp.2013 Â§ 253 of the OAPA.
Â¶5 The defendants answered and asserted plaintiffs "have an exclusive remedy to raise the issues they have raised in this case in the county where their implied consent case has been filed." Defendants admitted certain rules were promulgated and denied such rules invalidated plaintiffs' arrests or the accuracy of plaintiffs' breath tests. Defendants denied the alleged violations of the OMA, OAPA, and the rules of the Board.
Â¶6 Plaintiffs filed a motion to enter the cause on a non-jury docket for trial. No pretrial conference was held and no Rule 5 pretrial order was filed.
[4] Defendants filed a motion for summary judgment which included both OMA issues as well as affirmative defenses based upon other litigation involving plaintiffs. Plaintiffs' response did not request summary judgment, and argued "there is a material fact in dispute." On August 8, 2019, the trial court filed a Court Minute stating defendants' motion for summary judgment was denied, and the minute set an "evidentiary hearing" for October 13, 2019. On the day of the hearing, defendants filed an "Evidentiary Hearing Trial Brief and Motion for Judgment as a Matter of Law." Plaintiffs filed a trial brief after the hearing. The trial court and the parties appear to have treated this evidentiary hearing as a trial on the merits because the journal entry of judgment after the hearing disposed of the claims "at issue," including the various affirmative defenses pled by Defendants' Answer but not raised in their motion for summary judgment or at the hearing, except for two defenses related to res judicata and estoppel.
Â¶7 Defendants' combined motion and brief contains several references to "undisputed evidence." No issue is identified as a specific issue of fact for trial court review, and the identified issues are explained with references to one or more legal principles needing an adjudication. Defendants argued "it is undisputed that the Board did give actual notice of the Special Meeting to the public and to Plaintiffs' own attorney." The conclusion of the motion states undisputed evidence shows no violation of the Administrative Code or the Open Meeting Act, and by plaintiffs' guilty pleas in previous criminal cases "they come into this court with unclean hands and are precluded from challenging the Emergency [administrative] Rules."
Â¶8 On October 31, 2019, the parties appeared for the evidentiary hearing. The trial judge asked for opening statements and plaintiffs' counsel stated defendants "carry the burden" and could speak first. The trial judge characterized defendants' speaking first as "the burden of presentation, [and] order of proof." Defendants argued three issues were before the trial court: (1) Whether the Board violated the OAPA and 40:1-1-3 of the Administrative Code, and that defendants had the burden of proof; (2) Whether the Board's Special Meeting on October 7, 2016 violated the OMA due to improper and willful conduct of an official, and plaintiffs had this burden of proof; and (3) Whether the Board properly promulgated emergency rules, and defendants had this burden. Two witnesses testified at the hearing, a former Director for the Board and a former member of the Board. The trial court filed the journal entry of judgment a few weeks after the hearing.
Â¶9 The judgment states that on October 5, 2016, the Director of the Board sent a Notice of a Special Meeting to all of the individuals and media who had requested email notifications of the Board's meetings. The notice was for a meeting "to discuss possible action on proposed emergency rulemaking." The court determined the notice for the meeting was properly posted at the Board's offices. The trial court also determined in preparation for the meeting "and in promulgating the Emergency Rules, Director Behrens complied with the 'Rule Impact Statement' that is required by 25 O.S. 2011, Â§ 253." The Special Meeting held on October 7, 2016, "was attended by various Media organizations, as well as numerous attorneys, including Plaintiffs' attorney, Brian Morton."
Â¶10 The Board approved five emergency rules at the meeting. The Governor approved four of the emergency rules the same day as the meeting and approved the fifth emergency rule three days later on October 10, 2016. These emergency rules were published by the Secretary of State in the official State Registry on November 15, 2016.
Â¶11 The trial court rejected plaintiffs' claim that the Special Meeting was not properly called. Email communications between the Board's Director and members of the Board showed that at least four members of the Board were in agreement to hold the meeting. The court found the requirements in the Board's rules for calling a meeting were satisfied.
Â¶12 Plaintiffs also claimed the advance public notice of the Special Meeting was not properly given to the Secretary of State as required by 25 O.S.2011 Â§ 311 (11). On October 7, 2016, the version of 25 O.S. Â§ 311 (11) in effect stated in part as follows.
Special meetings of public bodies shall not be held without public notice being given at least forty-eight (48) hours prior to said meetings. Such public notice of date, time and place shall be given in writing, in person or by telephonic means to the Secretary of State or to the county clerk or to the municipal clerk of the public bodies in the manner set forth in paragraphs 2, 3, 4, 5 and 6 of this section. 
The Director testified he was aware of a duty to give notice to the Secretary of State, and that neither he nor anyone else on behalf of the Board took any action to provide notice to the Secretary of State. The Director testified he "negligently failed to send the email" for the notice of the hearing to the Secretary of State.
Â¶13 The trial court's judgment states defendants' motion for summary judgment was previously denied "because of the existence of fact issues regarding the 'willfulness violation' standard set out in 25 O.S.2011, Â§ 313." The trial court noted that 25 O.S. 2011, Â§ 313 of the OMA provides: "Any action taken in willful violation of this act shall be invalid." The trial court's judgment states that whether a willful violation of Â§ 311 (11) occurred when the Board failed to give notice to the Secretary of State is an issue of fact. The court found a willful violation occurred and stated the factual basis for this finding was based upon four factors.
A. Director Behrens testified that he was aware of the duty to give notice to the Secretary of State;
B. Director Behrens testified that neither he nor anyone else on behalf of the BoT [the Board] took any steps to provide notice of the Special Meeting to the Secretary of State;
C. Director Behrens testified that he "did not send an email" to the Secretary of State, and that he has "no memory of telling them (i.e., the Office of the Secretary of State) of the meeting;"
D. Director Behrens further testified that he had "negligently failed to send the email" to the Secretary of State.
The trial court stated the issue of a "willful violation" in 25 O.S. Â§ 313 presented an issue of fact, and this fact should be analyzed using the holdings of two opinions by the Court of Civil Appeals: In the Matter of the Appeal of the Order Declaring Annexation Dated June 28, 1978, issued by Gene Frasier, 1981 OK CIV APP 57, 637 P.2d 1270, and Wilson v. City of Tecumseh, 2008 OK CIV APP 84, 194 P.3d 140.
Â¶14 The trial court found the failure of the Board to notify the Secretary of State a willful violation, and then stated the Emergency Rules adopted by the Board at the Special meeting were invalid. The journal entry of judgment states: "This journal entry is to be considered a final order, as the Journal Entry disposing of all claims at issue in this matter." The journal entry states a declaratory judgment is granted to the plaintiffs as sought in their petition.
II. Appeal and Certiorari Issues
Â¶15 Defendants appealed and raised two assignments of error as separate grounds to reverse the trial court's judgment. One assignment of error is based upon plaintiffs invoking "another action pending between parties for the same claim," and "res judicata, collateral estoppel, judicial estoppel, and/or issue preclusion." One part or aspect of these defenses was raised in their summary judgment motion when they made a combined mootness, standing, and estoppel argument. They argued plaintiffs were required by Martin v. Phillips, 2018 OK 56, 422 P.3d 143, to raise the issue of improper testing procedure and equipment as a defense in plaintiffs' previous criminal cases.[5] Defendants raised this issue again in their motion for judgment as a matter of law filed on the day of the evidentiary hearing,[6] and again on appeal. This assignment of error on appeal was not adjudicated by the Court of Civil Appeals, and the appellate court focused solely on the second assignment of error.
Â¶16 The second assignment of error challenged the trial court's construction of the Open Meeting Act, and the appellate court reversed the judgment of the District Court. The appellate court concluded no willful violation of the OMA occurred because the evidence showed the Director's conduct was accidental and constituted negligent noncompliance with the Act. Defendants argue the appellate court's holding is that a willful violation of the OMA requires an official's intent to violate the Act. The appellate court concluded the Director's conduct was not willful, and reversed the trial court's judgment.
Â¶17 Plaintiffs sought certiorari for review of the appellate opinion. Plaintiffs' claims on certiorari may be summarized as follows: (1) The appellate opinion conflicts with District Court's findings of fact; (2) The appellate opinion conflicts with Excise Board of Greer County v. Rogers, 1984 OK 95, 701 P.2d 754, and Fraternal Order of Police v. City of Norman, 2021 OK 20, Â¶ 18, 489 P.3d 20; (3) The appellate opinion conflicts with Okmulgee County Rural Water District No, 2 v. Beggs Public Works Authority, 2009 OK CIV APP 51, 211 P.3d 225 (Division III); and (4) The appellate opinion conflicts with purposes of the OMA because (a) the Act should be construed liberally, and (b) the appellate opinion places a burden on the public to show improper motive or intent of public officials when applying the Act.
III. Standard of Review
Â¶18 The arguments on certiorari involve the concept of willful conduct by an official when the official fails to provide notice as required by the OMA. Defendants' principal appellate brief recites evidence before the trial court, and then concludes with a statement the Director did not willfully violate the OMA. Defendants rely upon Wells v. Oklahoma Roofing & Sheet Metal, L.L.C., 2019 OK 45, Â¶ 15, 457 P.3d 1020, for the proposition that the definition of willful "carries with it some degree of 'intent' to violate the Act." Defendants argue the Director sent out a group email including a Notice and Agenda for a special meeting, but he negligently failed to include the Secretary of State as a recipient of an email notification.
Â¶19 Defendants argue the trial court improperly concluded "even negligent unintentional acts meet that definition [of willful for a violation of the OMA]." Defendants' argument concludes with an assertion that a contested question of law construing a statute is reviewed de novo and the trial court's holding that a willful violation occurred should be reversed on appeal. Defendants' response on certiorari adds additional argument concerning the nature of willful conduct, and relies upon language in the opinion by the Court of Civil Appeals.
Â¶20 Plaintiffs' appellate brief argues the determination of the Director's willfulness was a trial court's adjudication of fact, and an "issue of fact that must be analyzed under the cases of In the Matter of the Appeal of the Order Declaring Annexation Dated June 28, 1978, Issued by Gene Frasier, 1981 OK CIV APP 57, 637 P.2d 1270, and Wilson v. City of Tecumseh, 2008 OK CIV APP 84, 194 P.3d 140." Plaintiffs' appellate brief also argues as a general proposition our de novo appellate review is proper for an issue of law, and they rely upon two of our opinions for this concept.[7] 
Â¶21 In one sense, every appeal requires judicial explanation and application of one or more principles of law, and a principle of law presented as an issue or question for appellate adjudication receives de novo review.[8] We agree with the parties' reasoning that an interpretation of a statute is a question of law, and subject to our independent and non-deferential examination applying a de novo standard of review.[9] While this reasoning is correct concerning the parties' request for this Court to determine meaning of statutory language in the OMA, the reasoning is incomplete on a main issue framed by the parties, i.e., methods for reviewing a trial court finding of fact.

Â¶22 The parties argue whether the evidence before the trial court showed willful conduct by the Director concerning a violation of the OMA. They do not use phrases such as "insufficient evidence" or "sufficiency of evidence," but their arguments on appeal and certiorari concern whether evidence in the trial court was sufficient to show willful conduct. They label a trial court's adjudication of a willful violation of the OMA as an adjudication on an "issue of fact" in a declaratory judgment proceeding. The District Court denied a motion for summary judgment and stated an evidentiary hearing was necessary on an issue of fact. An issue of fact or mixed issue of law and fact usually requires a deferential appellate standard when a fact was controverted and adjudicated by a District Court.
[10] But there are exceptions which include, for example, certain questions of law and fact,[11] as well as a challenge to sufficiency of evidence for a prima facie case which is the controversy before the Court.[12] 
Â¶ 23 An appellate standard of review for an assignment of error is based upon the type of the proceeding, nature of the decision, and the trial court procedural context with its particular judicial discretion exercised.[13] Generally, a declaratory judgment proceeding is neither strictly legal nor equitable and assumes the character of the nature of the controversy.[14] In the context of a request for declaratory relief, a claim of insufficient evidence ordinarily requires the parties to identify the nature of the controversy adjudicated and then apply the correct standard of review for appellate examination of evidence for the specific controversy.[15] The nature of the decision adjudicating plaintiffs' petition is a District Court judgment determining whether plaintiffs possessed rights created by statutes which could be enforced in an action plaintiffs alleged was authorized by statute.[16] 
Â¶24 Generally, a trial court's finding of a fact in a trial will not be reviewed on appeal as a ground to reverse the judgment when evidence in the record is sufficient to support the judgment rendered.[17] However, a District Court's finding there is an absence of sufficient facts necessary to prove a legal element turns the issue into one of law and is reviewed de novo; i.e., whether the evidence submitted fails as a matter of law in showing a necessary legal element.[18] Similarly, we have explained a denial of a directed verdict is reviewed de novo,[19] and a District Court's finding the presence of sufficient facts necessary to prove a legal element will turn the issue into one of law when one party asserts the other party failed to demonstrate a prima facie case for recovery.[20] Defendants filed a motion for a judgment as a matter of law which challenged whether evidence showed a prima facie case for plaintiffs.

Â¶25 The controversy before us is whether there was proof showing willful conduct by the Director who failed to provide notice of the special meeting to the Secretary of State. Our appellate review is not de novo merely because the OMA statutory phrase "willful violation" must be defined and applied, but because the assignment of error is whether the evidence showed a prima facie case of willful conduct as an issue of law.
[21] 

IV. Willful Conduct and Violation of the OMA

Â¶26 Plaintiffs argue: If an official knows he or she has an official duty and fails to perform the duty, then the official's failure to perform is one type of knowing and intentional conduct, and a willful violation. Important to plaintiffs' view is a sentence in their petition for certiorari where they comment that willful conduct includes conduct by an official who "knew or should have known" his or her conduct would violate a statute. Plaintiffs focus on the Director's knowledge that a statutory duty exists, combined with a should-have-known concept applied to the fact the Director was unaware he omitted to include the Secretary of State's email address on a group or individual email giving notice of the Board's meeting.
Â¶27 Defendants argue: If an official negligently fails to perform an official duty, then this failure is not intentional conduct and not a willful violation of the statute. Defendants' argument has an element similar to plaintiffs' argument, i.e., focusing on knowledge possessed by an official. Defendants cite the transcript of the hearing and they rely on the Director's knowledge and awareness of his own conduct when performing the requirements of the OMA, a failure to include the email address for the Secretary of State in an email.
Â¶28 The defendants' argument may be summarized as follows. Defendants point to the Director's self-assessment of negligence and they cite the Director's lack of awareness of factual circumstances as a determinative element for an adjudication stating willful conduct did not occur. They argue a willful violation of the OMA requires conduct "substantially higher in magnitude than simple inadvertence in negligence." They argue a willful violation of the OMA should be based upon "premeditation" and "intentional wrongdoing," and they rely on a statute in Oklahoma's criminal code defining "willfully", 21 O.S.2011 Â§ 92,[22] language in the OMA making a willful violation of the OMA a misdemeanor, and our discussion of intentional torts in the context of workers' compensation law.[23] 
Â¶29 The controversy before us is controlled by the legislatively-controlled purpose and language of the OMA. Legislative intent controls statutory interpretation.[24] We examine a whole legislative act in light of its general purpose and object,[25] and give effect to the legislature's intent by construing and applying the language in a manner which does not destroy the obvious purpose and design of the statutory language.[26] The Legislature has stated the Open Meeting Act is designed to effectuate "the public policy of the State of Oklahoma to encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems." 25 O.S.2011 Â§ 302. The Legislature effectuated this public policy by creating both a criminal penalty and an invalidating provision as part of the OMA: (1) Any person or persons willfully violating any of the provisions of the OMA shall be guilty of a misdemeanor;[27] and (2) Any action taken in willful violation of the OMA shall be invalid.[28] Although not specifically stated by defendants, their argument distinguishes between (1) negligent misdemeanor conduct and (2) willful misdemeanor conduct, and they argue only the latter leads to an invalidation of rules by the Board. Their argument and authority draws on similar language of willfulness for the purpose of a misdemeanor in 25 O.S. Â§ 314 and willful conduct in 25 O.S. Â§ 313 used for the purpose of invalidating actions taken at a public meeting. Section 313 and section 314 both relate willful conduct to conduct which violates the OMA.

Â¶30 Historically, a statute could denounce the mere doing of an act as criminal, and a statute could also denounce as criminal the willful doing of an act. The first type of statute included those offenses classified as mala prohibita where intent was imputed.
[29] The second type was usually described as cases where "a specific wrongful intent, that is, actual knowledge of the existence of obligation and a wrongful intent to evade it, is of the essence."[30] A mala prohibita statute was usually described as a form of police regulation, intended to protect the public or to promote the general welfare, and a criminal intent was not considered a necessary element, unless so declared by the legislature in apt words.[31] One context for this distinction occurred when the U. S. Supreme Court explained an often-recognized difference between (1) a crime requiring mens rea and (2) public welfare offenses requiring no mens rea and characterized as malum prohibitum.[32] 
Â¶31 The High Court explained that many public welfare offenses "depend on no mental element but consist only of forbidden acts or omissions." Liparota v. United States, 471 U.S. 419, 432, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (quoting Morissette v. United States, 342 U.S. 246, 251-252-253, 72 S.Ct. 240, 244, 96 L.Ed. 288 (1952)). Importantly, the Court noted the existence of reasonable distinctions in the knowledge of actors charged with violating various public welfare regulations. For example, in Liparota the Court discussed knowledge of the actor in different types of public regulatory statutes, and explained "a corporate officer could violate the Food, Drug, and Cosmetic Act when his firm shipped adulterated and misbranded drugs, even 'though consciousness of wrongdoing be totally wanting.'"[33] However, the Court then explained the criminal liability for using, transferring, acquiring, altering, or possessing food stamps in an unauthorized manner could not be compared to the selling of adulterated drugs, and the Court rejected the Government's argument that Congress had no reason to impose a "knowledge of illegality requirement" for unauthorized possession of food stamps.[34] Generally, there exists a presumption that criminal liability should attach only when a defendant knows the facts that make his or her conduct illegal, but circumstances may place a duty requiring the defendant to know the characteristics of his or her conduct that brings it within the scope of the statute controlling the conduct.[35] But certain factual mistakes by the actor may provide a defense to a charge of violating a statute,[36] and the concept has been recognized as a "mistake of fact" defense relevant to a crime which has criminal intent as one of its elements, i.e., the mistake of fact negates the existence of a mental state essential to the crime charged.[37] A court may explain this defense as an honest mistake of fact inconsistent with criminal intent based upon facts showing the actor's reasonable belief for an honest mistake.[38] 
Â¶32 Although the distinction between malum in se and malum prohibitum statutes may be improper for some modern-day controversies,[39] the distinction helps explain why legislative bodies were concerned in some instances of public regulation statutes with making intent, or willfulness, or the knowledge of the actor as an element for a wrongful act traditionally classified as a mala prohibita public regulation. For example, a lack of awareness, mistake, or honest inadvertence was mentioned more than a hundred and seventy-five years ago when a court commented on a public official's willful neglect of duty and observed the official knew what was asked of him, knew what he refused, and the neglect could not be excused because there were no facts showing surprise, inadvertence, or misapprehension on the part of the official.[40] 
Â¶32 In modern times we have statutory schemes which combine civil remedies with criminal penalties. The degree of culpability labeled as negligence, gross negligence, willful conduct, and intentional conduct may all be included and prohibited by a single statutory scheme.[41] The OMA combines a civil remedy with a criminal penalty. Section 313 states any action taken in willful violation of the OMA shall be invalid, and section 314 states both a person willfully violating the OMA shall be guilty of a misdemeanor and a person may bring a civil suit based upon a violation of the OMA. Both sections 313 and 314 reference willful violations. In 1981 our Court of Criminal Appeals noted the criminal penalty was a misdemeanor provision, and a crime classified as malum prohibitum.[42] Therein parties claimed no proof of criminal intent existed, and the court noted the record showed a willful failure to comply with the OMA, and proof beyond a showing of willfulness was not statutorily required.[43] A few years later in 1992 the Court of Criminal Appeals again noted the misdemeanor was a "mala prohibita offense," and the offense was based upon "a willful violation of any provisions of the Act."[44] One of the Director's arguments rests upon the idea that willfulness has the same definition for (1) the purpose of a civil invalidation pursuant to section 313 sought in a civil legal action brought pursuant to section 314, and (2) a criminal misdemeanor action pursuant to section 314.

Â¶33 In summary, defendants argue the combined civil and criminal remedial scheme in the OMA uses a consistent definition for both civil and criminal willfulness, and a reasonable and honest single mistake of fact by the Director giving an OMA notice is a defense to a claim of both civil and criminal willfulness because the purpose of the OMA was not frustrated by the Director's mistake.
Â¶34 When we have examined the concept of an official's willful conduct in the context of a statutory duty we have explained our definition of willfulness has varied based upon the statutes in question and the intent and purpose of the statutory language.
[45] Similar to the analysis used by courts determining whether the purpose of a statutory scheme is frustrated by an actor's reasonable belief and honest mistake, we also examine whether the purpose of the OMA is frustrated by a definition for a willful violation of the Act. In Fraternal Order of Police v. City of Norman, 2021 OK 20, 489 P.3d 20, we discussed willfulness for the purpose of a violation of the OMA.
Willfulness does not require a showing of bad faith, malice, or wantonness, but rather, encompasses conscious, purposeful violations of the law or blatant or deliberate disregard of the law by those who know, or should know the requirements of the Act. Notice of meetings of public bodies which are deceptively vague and likely to mislead constitute a willful violation.
Id. 2021 OK 20 at Â¶ 18 (quoting Rogers v. Excise Board of Greer County, 1984 OK 95, 701 P.2d 754, 761). We explained the public policy of the OMA is defeated if the required notice is deceptively worded or materially obscures the stated purpose of the meeting. Fraternal Order of Police, 2021 OK 20 at Â¶ 9, 489 P.3d at 24. We stated therein a notice and agenda which listed adopting or rejecting a budget on the agenda, but did not give any notice of new amendments for reallocation of funds in the budget was deceptively vague. Id. 2021 OK 20, at Â¶Â¶ 17-19, 489 P.3d at 26.
Â¶35 Plaintiffs rely upon language in appellate opinions stating a deceptively worded notice or agenda violates the OMA by obscuring the purpose of a public meeting. For example, plaintiffs rely upon Okmulgee County Rural Water Dist. No. 2 v. Beggs Public Works Authority, 2009 OK CIV APP 51, 211 P.3d 225, and its reliance upon Haworth Board of Education of of Independent School Dist. No. I--6 v. Havens, 1981 OK CIV APP 56, 637 P.2d 902. Haworth stated a public policy advanced by the OMA "is defeated if the required notice is deceptively worded or materially obscures the stated purpose of the meeting." Id. 637 P.2d at 904. Similarly, they rely upon Wilson v. City of Tecumseh, 2008 OK CIV APP 84, 194 P.3d 140, and its conclusion an agenda item specifying "employment" of an employee was insufficient to inform a person of ordinary education and intelligence that two public entities were considering awarding a $30,000.00 bonus to the employee.
Â¶36 Plaintiffs also rely upon In the Matter of the Appeal of the Order Declaring Annexation Dated June 28, 1978, Issued by Gene Frasier, 1981 OK CIV APP 57, 637 P.2d 1270, where a school board and acting County School Superintendent held several meetings without both the notices and agendas required by the OMA. Plaintiffs' reliance upon this opinion is misplaced. The appellate court's analysis included the following statement: "we are well-convinced that they knew or should have known the Act's requirements and blatantly or deliberately disregarded the law." Id. 637 P.2d at 1275 (emphasis added). The phrase "and blatantly or deliberately disregarded the law " references what officials did, the character of their conduct, in combination with what officials knew or should have known. The appellate court did not equate (1) an official's mere knowledge of his or her duty "to know or should know" the OMA with (2) that which is willful. The concept of willfulness was applied to the official's conduct. Because this know-or-should-know duty always exists for an official it cannot be the determinative factor for when an official's conduct is willful in failing to follow a statute. It has been a long-established rule of law that public officials are presumed to do their duty.[46] One aspect to this presumption is a related long-held presumption that all officials know or should know the law they are charged to enforce.[47] Because of these legal presumptions, plaintiffs' argument is essentially any statutory misstep by an official in applying the OMA is necessarily willful conduct because officials are charged with knowing the law; and if an official claims to be ignorant of the law, then the official has also engaged in willful conduct by remaining ignorant of the official's statutory duties when violating a statute. In other words, a failure to follow a statute in the OMA will always be some type of willfulness if we were to adopt plaintiffs' views. Rogers v. Excise Board of Greer County, supra, did not expand upon the concept of blatant conduct violating a statute and a party showing an official's willfulness: "Willfulness does not require a showing of bad faith, malice, or wantonness, but rather, encompasses conscious, purposeful violations of the law or blatant or deliberate disregard of the law by those who know, or should know the requirements of the Act." Rogers, 701 P.2d at 761. The descriptive words: "purposeful," "blatant," and "deliberate" reference conduct that violates a statute. These descriptive terms are not used to describe either the presence or character of the official's knowledge of law and legal obligations. Again, officials always know or should know the law when performing any official act, and it is the character or nature of that act the official performs in the context of particular factual circumstances which determines whether the conduct shows or demonstrates a blatant, conscious, deliberate, purposeful, or willful violation of a statute the official knows or should know.
Â¶37 Plaintiffs' argument based upon these opinions includes a comparison and characterization of two results: (1) A deceptive notice results in a failure to properly inform the public of a meeting; and (2) A failure to send a notice to the Secretary of State results in a failure to properly inform the public of a meeting. The two results are equated for the purpose of defining a willful violation of the OMA. Clearly, the OMA requires more than a mere violation of the Act to invalidate action of officials: "Any action taken in willful violation of this act shall be invalid." 25 O.S., 2011 Â§ 313 (emphasis added). Plaintiffs and the trial court recognize this principle and point to the Director knowing the Board was required to give notice to the Secretary of State.
Â¶38 We disagree with one of defendants' assertions that evidence must show an official factually intended to violate the OMA before actions at public meetings are judicially invalidated due to OMA noncompliance. We also disagree with plaintiffs' assertion a willful violation may be shown by merely pointing to (1) an official's knowledge of a statutory duty and (2) a result which is an actual failure to perform this duty. Our opinions have uniformly stated a willful violation for the purpose of the OMA is conduct that is "conscious," "purposeful," "blatant" or "deliberate" disregard of the law. Fraternal Order of Police v. City of Norman, supra. Answering questions such as why an official's notice did not comply with the OMA, manner of noncompliance, frequency of noncompliance, effect of noncompliance, and extent of noncompliance are important in the judicial determination whether a willful violation of the OMA occurred. Answering this question requires an examination of the record and its application to the de novo issue whether a prima facie case was presented.
Â¶39 The official involved, the Director of the Board, testified he was notified on September 29th of an order in Sample which finalized the case. He explained the perceived need by certain officials for the Board to respond and immediately create new rules. He testified concerning several communications with members of the Board and General Counsel for the Governor of Oklahoma during the first week of October 2016. The Director sent emails to Board members to determine availability for a special meeting and the content of proposed emergency rules. In conversations with the General Counsel for the Governor it "was clear that waiting three weeks was not an option," "this was a priority for the Governor's office," "that this issue be handled quickly," "and I needed to get it done quickly." Tr. at 25.
[48] The special meeting was scheduled for a few days later on October 7, 2016.
Â¶40 He indicated that between September 29th and October 7th the media was reporting on issues related to Sample and alcohol testing by law enforcement. The Director "dealt with probably three to five media requests per day including "on-camera interviews, it was a very busy time with the media." Tr. at 26. He testified "there was -- this was a public safety concern because there were no -- arguably, there were no viable test methods available to law enforcement for impaired driving purposes." Tr. at 36.
[49] 
Â¶41 Between September 29th and October 7th the Director coordinated drafting the emergency rules with the members of the Board, Governor's Office, and the Department of Public Safety by "sending out drafts, getting comments back and incorporating those" in the rules. Tr. at 26. He also coordinated input from the Oklahoma District Attorneys Council and incorporated this input into the rules.

Â¶42 The Director posted a notice and agenda of the meeting at the principal place of business of the Board where it meets. He posted forty-eight hours in advance of the meeting. He notified members of the Board and people who had requested notice of the rule-making. He emailed the notice and agenda to individuals, entities, organizations, and news media who requested notice. He stated "that's probably 30 people, 30 individual email addresses, I sent that to that group that I keep." Plaintiffs' counsel was on the list of individuals to receive notice of the hearing.
Â¶43 The Director testified that at the time of providing notice of the hearing by the group email he thought he had given notice of this email to the Secretary of State: "And I at least thought I sent it to the Secretary of State's Office." Tr. at 30. After given notice of plaintiffs' action, the Director discovered he had not given an actual email notice of the meeting to the Secretary of State. The Director testified his usual and ordinary practice for giving notice to the Secretary of State was by email to an email address furnished by the Secretary of State for such purpose.
"That was part of the process that I do, I mean, I had had special meetings before a number of times. In this Instance I -- with all the things that I talked about having to -- being done from September 29th until October 7th, I -- sending that notice to the Secretary of State slipped through the cracks.
Tr. at 44. His usual practice was to send an email to the Secretary of State when he sent an email to the group of individuals interested in the meeting. Tr. at 44. He testified that he did not intentionally fail to send a notice to the Secretary of State. He stated he was negligent when failing to provide the notice. He was asked if he sent an email to the Secretary of State with the notice and agenda of the meeting and he responded: "I did not." Tr. at 45.
Â¶44 The Director testified he had conversations with the Secretary of State's office immediately prior to the meeting, and "we talked about the emergency rules themselves, filing them, [and] the rule process." Tr. at 27. They also "talked about the dates of the meetings and contents of the meetings," but the Director did not have any memory of informing anyone in the office of the Secretary of State about the time and date of the meeting on October 7, 2016. Tr. at 45-46.
Â¶45 The Director's testimony characterizes his conduct as negligence when failing to notify the Secretary of State. His testimony is essentially an explanation of his lack of knowledge or self-awareness concerning his own actions and conduct when sending emails notifying the media and individuals of the special meeting: "I...thought I sent it to the Secretary of State's Office," when in fact he did not send the email to the Secretary of State.
Â¶46 The evidence before the trial court was that the Director sent the notice of the special meeting to several individuals by email. This evidence also included the Director stating he routinely sends notices for special meetings to an email address maintained by the Secretary of State for the purpose of receiving notices of meetings. He stated he thought he notified the Secretary of State of this specific meeting, and he was unaware he had not sent the email until receiving notification of plaintiffs' legal action. He provided his view why the notice to the Secretary of State "slipped through the cracks." The only evidence presented to show a willful or purposeful conduct was the Secretary of State not receiving the notice, the Director's statement he was aware of the statute requiring a notice filed with the Secretary of State, and the Director usually filed such notices.
Â¶47 The trial court heard this evidence and made findings on the issue of the Director's willful conduct. One finding states neither the Director nor anyone else "took any steps to provide notice of the Special Meeting to the Secretary of State." Uncontradicted testimony by the Director stated he sent a group email notice of the meeting, this type of group email by him ordinarily has the Secretary of State as a recipient or he sends the email at the same time to the Secretary of State, but the Director failed to add the Secretary of State's email address. The Director testified this email was the step he ordinarily took to inform the Secretary of State, but its execution was faulty due to a mistake of fact related to the Director's awareness of his conduct while busily engaged with his duties. The trial court focused on the Director's assessment of his actions and the result of the Secretary of State not receiving notice, and used the assessment and result as evidence no steps were taken to provide notice.
Â¶48 The trial court made an express finding of willful conduct by the Director based upon its finding that Director testified he "negligently failed to send the email." The issue of an actor's knowledge and awareness occurs in both negligence and willfulness classifications, but they are not identical. The concept of what an actor knows or should know occurs in negligence cases.
[50] In negligence jurisprudence an actor's knowledge may involve issues of foreseeability, defining a duty, or an element of causation.[51] We have approved application of the Restatement (Second) of Torts, Â§ 289 (1965),[52] and it states an actor should exercise such attention, judgment, knowledge, and memory of the circumstances as a reasonable person would have, as well as the superior knowledge the actor possesses.[53] When the actor is required to know and act, he or she may nevertheless negligently fail to know, look, comprehend, and observe what is visible,[54] and the actor's forgetfulness of knowledge and inattention may occur by simple inadvertence in a case of ordinary negligence[55] or by "utter forgetfulness of legal obligations" in a case of gross negligence."[56] The flow of plaintiffs' argument is that an official sending an OMA notice, such as the Director, should know the actual recipients of the notice, and a failure to always know the recipients with one hundred percent accuracy is a type of willful conduct.
Â¶49 Characterizing a party's degree of negligence or intentional conduct is generally understood as an assessment on a continuum of culpability or tort liability.
[57] For example, many years ago one court stated "ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure."[58] This view was recently explained by our Court when we stated "It is well-settled that the common law divides actionable tortious conduct into two categories: (1) accidental and (2) willful acts that result in intended or unintended harm."[59] 
Â¶50 Several years ago we stated gross negligence was substantially higher in magnitude than simple inadvertence in negligence, and also in a particular application gross negligence may fall short of an intentional wrong. Graham v. Keuchel, 1993 OK 6, 847 P.2d 342, 362. However, gross negligence may be equated with one type of willful conduct when the actor's conduct "demonstrates such a total disregard of another's rights that it may be equated with evil intent or implies such entire want of care or recklessness of conduct that it (a) can be likened to positive misconduct or (b) evinces a conscious indifference to predictable adverse consequences." Id.

Â¶51 In summary, gross negligence may be equated with one type of willful conduct in tort. The trial court did make a finding of negligence by the Director, but negligence is ordinarily associated with types of inadvertence and not types of willful conduct. Assuming for the purpose of argument a tort standard for gross negligence could be used to show a willful violation of the OMA, the trial court made no finding of gross negligence nor did it use such a concept to make a finding of a willful violation of the OMA.
Â¶52 Upon examination of the trial court's findings and the trial record for (1) the defendants' asserted reason for noncompliance, (2) manner of noncompliance, (3) frequency of noncompliance, (4) extent of noncompliance, and (5) effect of noncompliance,
[60] we ask whether the Director's failure to send the notice to the Secretary of State frustrated the purposes of the OMA. No party has suggested that any citizen was waiting for the Secretary of State's notice as a means to participate in the meeting. The record states the Director did not know of the failure to provide notice until the plaintiffs' legal action occurred. In other words, no one complained to the Director about reliance upon the Secretary of State's notice. The meeting was held with a notified media and plaintiffs' counsel. Many email addresses appeared on the group email which the Director typically used to send to the Secretary of State, and the Director failed to notice the address for the Secretary of State was missing.
Â¶53 We need not determine whether a 25 O.S. Â§ 313 willful violation of the OMA has the same meaning as a willful violation of the OMA for the purpose of defining a misdemeanor in 25 O.S. Â§ 314. We also need not expressly incorporate into 25 O.S. Â§ 313 various tort standards for willfulness discussed by the parties. Our opinions such as Fraternal Order of Police v. City of Norman, supra, explain a willful violation of the OMA requires conduct that is "conscious," "purposeful," "blatant" or "deliberate" disregard of the law.
Â¶54 We agree with defendants the Director's failure to include the Secretary of State's name on a group email to several email addresses on one occasion did not frustrate the purpose of the OMA at a meeting when (1) individuals and entities desiring to be notified of such were notified, (2) the reason for the failure to send the notice is supported by testimony indicating a single honest mistake while trying to send the notice, and (3) the failure to provide actual notice to the Secretary of State occurred during unusual circumstances involving a perceived need for timely regulations concerning public safety. We agree with defendants the evidence was insufficient to show the Director's willful violation of the OMA notice provision requiring notice sent to the Secretary of State. The District Court judgment is reversed on this issue.
V. Conclusion, Reversal, and Remand
Â¶55 We hold the evidence was insufficient to make a prima facie case that the Board's Director willfully violated the Open Meeting Act when he failed to send the email notice of the special meeting to the Secretary of State. The District Court's declaratory judgment finding an Open Meeting Act willful violation is reversed. The District Court's determination that the Board's emergency rules were invalid based upon a willful violation of the OMA is also reversed.
Â¶56 Defendants also raised an alleged error of the District Court when it denied their defense combining mootness, standing, and estoppel theories. This assignment of error was not decided by the Court of Civil Appeals and defendants did not raise it on certiorari. We do not address this assignment of error.
Â¶57 The District Court judgment rejected plaintiffs' claim asserting the Board's Special Meeting was not properly called. Plaintiffs did not appeal this disposition and it is not before us on certiorari.
Â¶58 The opinion of the Court of Civil Appeals is vacated. The judgment of the District Court is reversed, and the controversy is remanded to the District Court for additional proceedings consistent with the Court's opinion.
Â¶59 CONCUR: DARBY, C.J.; KANE, V.C.J.; KAUGER, WINCHESTER, EDMONDSON, COMBS, and ROWE, JJ.
Â¶60 DISSENT: GURICH, and KUEHN, (by separate writing), JJ. 
FOOTNOTES
[1] Prima facie evidence establishes a given fact when showing a necessary element to a cause of action adjudicated by the trial court's judgment. State, ex rel. Pruitt v. Native Wholesale Supply, 2014 OK 49, n. 6, 338 P.3d 613, 619 (citing Sides v. John Cordes, Inc., 1999 OK 36, Â¶ 14, 981 P.2d 301, 306 (a prima facie case is made by that quantum of proof which, if unexplained or uncontradicted, is sufficient to establish a given fact and to uphold a judgment in favor of the issue which it supports, but which may be refuted by other evidence)); cf. Dan B. Dobbs, Paul T. Hayden and Ellen M. Burdick, The Law of Torts, Â§ 124 (2d ed., as updated 2018) (explained a "prima facie case for negligence" by identifying the elements for the cause of action of negligence).
[2] 25 O.S. 2011, Â§Â§301-314, inclusive and as amended. Section 301 states: "This act shall be known as the Open Meeting Act."
[3] Oklahoma Administrative Procedures Act (OAPA), 75 O.S. 2011 Â§Â§ 250-323 (as amended).
[4] A trial judge is not required to hold a District Court Rule 5 pretrial conference "in cases where jury has been waived but he [or she] may do so." 12 O.S.2011, Ch. 2, App. Rule 5 (A) (Rules for District Courts).
[5] Defendants' motion for summary judgment, 08/01/2019, at p.18; Defendants' Brief In Chief on appeal, 06/24/2020, at p. 17.
[6] Evidentiary Hearing Trial Brief and Motion for Judgment as a Matter of Law, 10/31/2019, O.R. at 304, 321.
[7] Appellees' appellate answer brief, at p. 2, citing Bank of the Wichitas v. Ledford, 2006 OK 73, Â¶ 20, 151 P.3d 193, 111 ("Questions of law are reviewed by a de novo standard."); Barber v. Barber, 2003 OK 52, Â¶ 5, 77 P.3d 576, 578 (a matter of law is reviewed de novo on appeal).
[8] Christian v. Gray, 2003 OK 10, Â¶ 41, 65 P.3d 591, 608) ("An issue of law decided by a trial court is reviewed by this Court de novo.")(citing Brown v. Nicholson, 1997 OK 32, n. 1, 935 P.2d 319, 321; Kluver v. Weatherford Hosp. Auth., 1993 OK 85, 859 P.2d 1081, 1083).
[9] State ex rel. Okla. State Bd. of Med. Licensure and Supervision v. Rivero, 2021 OK 31, Â¶ 42, 489 P.3d 36, 53.
[10] I. T. K. v. Mounds Public Schools, 2019 OK 59, Â¶Â¶10-11, 451 P.3d 125, 131-132 (court discussed review of issues of law, issues of fact, and issues of mixed law and fact, and in an action at law when reviewing a finding of fact made by a District Court we use a clearly erroneous standard and the presence of competent evidence in the record to support the judgment, as well as a clear-abuse-of-discretion standard when appropriate); Bruner v. Timberlane Manor Limited Partnership, 2006 OK 90, Â¶ 8, 155 P.3d 16, 20 ("Where the facts are controverted, mixed questions of fact and law may require deferential review standards.") (citing Feightner v. Bank of Okla., 2003 OK 20, Â¶ 3, 65 P.3d 624, 627).
[11] Calvert v. Swinford, 2016 OK 100, Â¶ 19, 382 P.3d 1028, 1036; cf. Ellington v. Horwitz Enterprises, 2003 OK 37, Â¶ 4, 68 P.3d 983, 984 (In workers' compensation jurisprudence we have similarly explained: "We have said that limitations issues involve mixed questions of fact and law and are reviewed as questions of law in this Court.").
Additional exceptions to applying a deferential review may arise based upon the nature of the issue or the tribunal reviewed. See, e.g., Thompson v. Anchor Glass, 2003 OK 39, n.10, 73 P.3d 836, 838 (discussing de novo review of disputed jurisdictional facts necessary for an administrative adjudication).
[12] See discussion and authority infra at Â¶ 24.
[13] Johnson v. CSAA General Insurance Company, 2020 OK 110, Â¶9, 478 P.3d 422, 426.
[14] Osage Nation v. Board of Commissioners of Osage County, 2017 OK 34, Â¶ 55, 394 P.3d 1224, 1243 (citing Macy v. Oklahoma City School Dist. No. 89, 1998 OK 58, Â¶ 11, 961 P.2d 804, 807).
[15] See, e.g., Carpenter v. Carpenter, 1982 OK 38, 645 P.2d 476, 481-82 (Court explained [1] relief sought by the party was "in the nature of a judicial declaration of rights" pursuant to a divorce decree, [2] relief was properly treated as a cause of action for declaratory judgment pursuant to 12 O.S. Â§ 1651, [3] the nature of the interests sought to be adjudicated were "interests cognizable in equity," and [4] the Court's application of the standard of review stated "the conclusion reached below neither against the clear weight of the evidence nor contrary to the established principles of equity.").
[16] Plaintiffs' petition states their petition was brought pursuant to 12 O.S. Â§ 1651, and 75 O.S. Â§ 306. Section 306 states the "validity or applicability of a rule may be determined in an action for declaratory judgment," and this judgment "may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question." 75 O.S.2011 Â§ 306 (A) & (D).
[17] I. T. K. v. Mounds Pub. Schls., 2019 OK 59, Â¶11, n.16, 451 P.3d 125, 132 (citing Central Plastics Co. v. Goodson, 1975 OK 71, Â¶ 29, 537 P.2d 330, 335 (fact questions in dispute are insufficient to reverse a judgment on appeal where the judgment is supported by the trial court record).
[18] I. T. K. v. Mounds Pub. Schls., 2019 OK 59, at n.17, 451 P.3d at 132 (citing Nelson v. Enid Medical Assocs., Inc., 2016 OK 69, Â¶ 11, 376 P.3d 212, 217; Christian v. Gray, 2003 OK 10, Â¶ 44, 65 P.3d 591, 609).
[19] Badillo v. Mid Century Ins. Co., 2005 OK 48, Â¶ 24, 121 P.3d 1080, 1092.
[20] Gillham v Lake Country Raceway, 2001 OK 41, Â¶ 7, 24 P.3d 858, 860 (a demurrer to the evidence or motion for directed verdict is granted only when the party opposing the motion has failed to demonstrate a prima facie case for recovery).
[21] Cf. Computer Publications, Inc. v. Welton, 2002 OK 50, Â¶ 6, 49 P.3d 732, 735 (on de novo review of a motion for a directed verdict the court regards as true all evidence favorable to the non-moving party and all reasonable inferences drawn therefrom, and disregards all evidence favorable to the moving party, "unless there is an entire absence of proof on a material issue").
[22] 21 O.S.2011 Â§ 92: "The term 'willfully' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage."
[23] Defendants rely on Wells v. Okla. Roofing & Sheet Metal, L.L.C., 2019 OK 45, Â¶ 15, 457 P.3d 1020.
[24] Assessments for Tax Year 2012 of Certain Props. Owned by Throneberry v. Wright, 2021 OK 7, n.21, 481 P.3d 883 (citing Smicklas v. Spitz, 1992 OK 145, 846 P.2d 362; Matter of Phillips Petroleum Co., 1982 OK 112, 652 P.2d 283, 285).
[25] Id. 2021 OK 7, n.23, 481 P.3d at 892 (citing City of Tulsa v. State ex rel. Public Employees Relations Bd., 1998 OK 92, Â¶14, 967 P.2d 1214, 1220).
[26] Id. 2021 OK 7, n.24, 481 P.3d at 892 (citing Independent School Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56, Â¶ 97 & n. 183, 473 P.3d 475, 516; Maule v. Indep. Sch. Dist. No. 9, 1985 OK 110, 714 P.2d 198, 203).
[27] 25 O.S.Supp.2014 Â§ 314:
A. Any person or persons willfully violating any of the provisions of this act shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not exceeding Five Hundred Dollars ($500.00) or by imprisonment in the county jail for a period not exceeding one (1) year or by both such fine and imprisonment.
B. Following a violation of this act, any person:
1. May bring a civil suit for declarative or injunctive relief, or both; and
2. If successful, shall be entitled to reasonable attorney fees.
C. If the public body successfully defends a civil suit and the court finds that the suit was clearly frivolous, the public body shall be entitled to reasonable attorney fees.
[28] 25 O.S. 2011, Â§ 313: Any action taken in willful violation of this act shall be invalid.
[29] Hargrove v. U.S., 67 F.2d 820, 823, 90 A.L.R. 1276 (5th Cir. 1933) (citing Landen v. U.S., 299 F. 75 (6th Cir. 1924); U.S. v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922)).
[30] Id. 67 F.2d at 823 (collecting cases including Potter v. U.S., 155 U.S. 438, 15 S.Ct. 144, 39 L.Ed. 214 (1894); Felton v. U.S., 96 U.S. (6 Otto) 699, 24 L.Ed. 875 (1877); Spurr v. U.S., 174 U.S. 728, 19 S.Ct. 812, 43 L.Ed. 1150 (1899)).
[31] Earl T. Crawford, The Construction of Statutes Â§ 275, at 555-556 (1940) (citing, State v. Lindberg, 125 Wash. 51, 215 P. 41 (1923); Hargrove v. U.S., supra note 29.
[32] Staples v. U.S., 511 U.S. 600, 617, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1993) (when defining a public welfare offense, usually imprisonment is not imposed for a public regulatory offense; and noting "imprisonment for a crime that requires no mens rea would stretch the law regarding acts mala prohibita beyond its limitations") (citing Tenement House Dept. v. McDevitt, 215 N.Y. 160, 168, 109 N.E. 88, 90 (1915) (Cardozo, J.); People ex rel. Price v. Sheffield Farms--Slawson--Decker Co., 225 N.Y. 25, 32--33, 121 N.E. 474, 477 (1918) (Cardozo, J.); id., at 35, 121 N.E. at 478 (Crane, J., concurring)). Staples also noted that the court in State v. Lindberg, supra note 31, departed from the usual practice when the state court applied "the public welfare offense rationale to a felony." Staples, 511 U.S. at n. 14, 617; cf. Cheek v. United States, 498 U.S. 192, 199-200, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (Congress changed a common-law presumption by making specific intent to violate the law an element of certain federal criminal tax offenses, and the Court interpreted the statutory term "willfully" as used in the federal criminal tax statutes as carving out an exception to the traditional rule.)
[33] Liparota v. U. S., 471 U.S. at 433 (quoting U. S. v. Dotterweich, 320 U.S. 277, 284, 64 S.Ct. 134, 138, 88 L.Ed. 48 (1943)),
[34] Id.
[35] United States v. Cox, 906 F.3d 1170, 1185 (10th Cir. 2018), cert. denied, 139 S. Ct. 2690, 204 L.Ed. 2d 1090 (2019), and cert. denied sub nom. Kettler v. United States, 139 S. Ct. 2691 (2019) (In a controversy involving two provisions of the National Firearms Act (26 U.S.C. Â§Â§ 5801--5872)(NFA), court noted "presumption that criminal liability should attach only when a defendant knows the facts that make his conduct illegal, by requiring that the defendant know the characteristics of a firearm that bring it within the NFA's ambit.").
[36] Id. 906 F.3d at 1194-1195 (Pursuant to Staples v. United States, 511 U.S. 600 (1994) "certain factual mistakes (e.g., that a firearm isn't a 'firearm' for NFA purposes) may provide a defense to a charge of violating the NFA, but legal mistakes (e.g., that the NFA doesn't apply to locally made firearms) do not.").
[37] See, e.g., 21 O.S.2011, Â§ 152 (5) ("All persons are capable of committing crimes, except those belonging to the following classes:...(5) Persons who committed the act, or made the omission charged, under an ignorance or mistake of fact which disproves any criminal intent. But ignorance of the law does not excuse from punishment for its violation").
[38] U. S. v. Quarrell, 310 F.3d 664, 675-676 (10th Cir.2002) (when a defendant is charged with "knowingly" violating the Archaeological Resources Protection Act (16 U.S.C. Â§Â§ 470aa et seq.), the purpose of the Act is not frustrated by defendant raising the defense based on his reasonable belief that he was lawfully excavating on private land with permission and had an honest mistake of fact).
[39] See, e.g., Marianne M. Jennings and Nim Razook, Duck When a Conflict of Interest Blinds You: Judicial Conflicts of Interest in the Matters of Scalia and Ginsberg, 39 U.S.F. L. Rev. 873, n.98, 901 (2005) (the American Bar Association, American Civil Liberties Union, and former U. S. Supreme Court Justice Scalia criticized malum prohibitum conflict of interest laws because they focused on the penultimate rather than ultimate (malum in se) act); Arias v. Lynch, 834 F.3d 823, 832 (7th Cir. 2016) (Judge Posner, concurring) (described crimes mala in se and mala prohibita and concluded "the distinction turns out to be paper thin").
[40] People v. Brooks, 1 Denio 457, 459, 43 Am.Dec. 704 (Sup.Ct.N.Y.1845) (A "willful neglect" of a statutory duty by a public official occurred when he refused to perform a mandatory duty, and the official "knew what was asked of him, he knew what he refused, [and] there was nothing like surprise, inadvertence or misapprehension" on the part of the official.); cf. Theodore Sedgwick, A Treatise on the Rules Which Govern the Interpretation and Construction of Statutory and Constitutional Law, 80-81 (2d ed. 1874, Fred B. Rothman & Co. reprint 1980) (discussing People v. Brooks, supra).
[41] See, e.g., David M. Uhlmann, After the Spill is Gone: The Gulf of Mexico Environmental Crime, and the Criminal Law, 109 Mich. L. Rev. 1413, 1458, n.267 (2011) (the Clean Water Act alternates between civil and criminal penalties as the violations become more egregious, and discharges without fault are strict liability civil violations; negligent discharges are misdemeanors; grossly negligent discharges carry heightened civil penalties; and knowing discharges are felonies) (citing Clean Water Act Â§311(b)(7)(A), 33 U.S.C. Â§1321(b)(7)(A) (2006) (strict liability civil penalties); 33 U.S.C. Â§1319(c)(1) (negligent misdemeanor criminal penalties); id. Â§1321(b)(7)(D) (gross negligence civil penalties); id. Â§1319(c)(2) (knowing felony criminal penalties)).
[42] Hilliary v. State, 1981 OK CR 78, 630 P.2d 791, 793.
[43] Id.
[44] State v. Patton, 1992 OK 57, 837 P.2d 483, 484.
[45] See, e.g., State v. Price, 2012 OK 51, Â¶ 23, 280 P.3d 943, 950 ("Our definition of willful neglect of duty has varied depending on the statutes in question. . . [and] we must look at a statute's underlying intent and purpose to define it.") (material and citation omitted).
[46] State ex rel. Lydick v. Brown, 1973 OK 135, 516 P.2d 239, 241 (quoting Henry v. Oklahoma City, 1940 OK 472, 108 P.2d 148) ("There is also a well-established rule of law that public officials are presumed to do their duty.").
[47] State v. Smith, 1914 OK 282, 142 P. 408, 410 (Court explained that election officials "as well as all other public officials, are presumed to know the law and to adhere to its mandates in the discharge of their public duties under their oaths of office").
[48] Citations to a transcript (Tr.) reference the transcript of the evidentiary hearing held on 02/11/2022, and which was used by the trial court for its findings and conclusions in its journal entry of judgment.
[49] Questions asked the Director by plaintiffs' counsel at the hearing appear to indicate different opinions by the Director and counsel on the legal effect of Sample and whether a viable test method was available after Sample but prior to the Board creating new rules. This issue is not presented as part of the appellate controversy, and we need not address the hypothetical issue. Tulsa Cty. Budget Bd. v. Tulsa Cty. Excise Bd., 2003 OK 103, n.31, 81 P.3d 662, 672 ("This Court does not issue advisory opinions or answer hypothetical questions.").
[50] Moran v. City of Del City, 2003 OK 57, Â¶ 11, 77 P.3d 588, 592 (a person's duty to discover facts, a duty to know or should know, and to anticipate and guard against what might occur under the circumstances, occurs in negligence cases).
[51] Id. 2003 OK 57, at n.4, 77 P.3d at 592.
[52] Brewer v. Murray, 2012 OK CIV APP 109, Â¶ 25, 292 P.3d 41, 52 (Approved for Publication by Supreme Court, 2012 OK 100, 290 P.3d 758) (applying Restatement (Second) of Torts Â§ 289(b), and concluding parent was charged with superior knowledge, perception, intelligence and judgment regarding parent's daughter due to parent's prior experiences and relevant to using reasonable judgment for the purpose of exercising parental control over daughter).
[53] Restatement (Second) of Torts Â§ 289 (1965):
The actor is required to recognize that his conduct involves a risk of causing an invasion of another's interest if a reasonable man would do so while exercising
(a) such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence, and judgment as a reasonable man would have; and
(b) such superior attention, perception, memory, knowledge, intelligence, and judgment as the actor himself has.
[54] Moran v. City of Del City, supra note 50, at Â¶ 11, 77 P.3d at 592 (quoting Prosser and Keeton on the Law of Torts, 182 (5th ed.1984) (discussing negligence of an actor)).
[55] Foster v. Emery, 1972 OK 38, 495 P.2d 390, 392 (equating mere carelessness and inadvertence with negligence).
[56] Altman v. Aronson, 231 Mass. 588, 591-592, 121 N.E. 505, 506 (1919) (defining negligence and gross negligence).
[57] Farley v. City of Claremore, 2020 OK 30, Â¶ 47, 465 P.3d 1213, 1237.
[58] Altman v. Aronson, supra note 56.
[59] Wells v. Oklahoma Roofing & Sheet Metal, L.L.C., 2019 OK 45, Â¶ 8, 457 P.3d 1020, 1025.
[60] An act of noncompliance with the OMA may require consideration of factors in addition to these five in order to determine if a willful violation of the OMA occurred.

KUEHN, J., DISSENTING:
Â¶1 I agree that this case turns on whether the violation of the Open Meetings Act here was willful. However, the meaning of "willful" is not an issue in this case. "Willful" within the Open Meetings Act was thoroughly discussed and clearly defined in a published Court of Civil Appeals opinion in 1981. In the Matter of the Appeal of the Order Declaring Annexation Dated June 28, 1978, issued by Gene Frazier, 1981 OK CIV APP 57, Â¶Â¶ 24-29, 637 P.2d 1270, 1274-75. This Court adopted this test in Rogers v. Excise Board of Greer County, 1984 OK 95, Â¶ 14, 701 P.2d 754, 761, and reaffirmed it in Fraternal Order of Police v. City of Norman, 2021 OK 20, Â¶ 18, 489 P.3d 20, 26, and it remains the applicable test. However, rather than apply it, the Majority unnecessarily redefines the term "willful", and the Court of Civil Appeals morphs the definition into something new altogether. Since a new definition is unnecessary, I dissent.
Â¶2 The Frazier test to determine whether violations of the Open Meetings Act are willful is whether an action or inaction of a mandate of the Act is done in a "conscious, purposeful" way or is a "blatant or deliberate disregard of the law by those who know, or should know, the requirements of the Open Meeting Act." Frazier, 1981 OK CIV APP 57, Â¶ 29, 637 P.2d at 2175. What willfulness does not require under this Act is a showing of "bad faith, malice, or wantonness." Id. Interestingly, the Majority quotes this language in paragraph 34 of the Opinion, but apparently fails to recognize that it is the dispositive test.
Â¶3 In reviewing the trial court's decision, the Court of Civil Appeals recognized the willfulness test set forth in Rogers and Frazier, but did not apply it. Instead, the Court unnecessarily redefined it. The Court, mistakenly analyzing previous cases by their facts and not by legal theory, determined that a willful violation of the OMA requires an intent to violate the OMA, with a motive to violate the OMA, and further found that the intent can even be inferred by the actions of a party who violates the OMA. Id. The facts of each of the cases analyzed by the Court of Civil Appeals happened to fall under the "conscious, purposeful" category -- that is, the facts in those cases fell under the first prong of the Frazier test. When looking to only the facts of those cases, the Court then mistakenly assumed that intent was an element of willful. This is not correct. Under the second prong, a willful action might violate the Act if it was made in blatant or deliberate disregard of the law, by someone who should have known better. This clearly requires no intent.
Â¶4 The Majority, on certiorari review of the Court of Civil Appeals opinion, appears to reject that Court's addition of "intent" to the Frazier test. However, instead the Majority spends time toiling over what "willful" means in the OMA. In doing so, the Majority also unnecessarily reworks the willfulness test outlined in Frazier.
Â¶5 But neither of the reviewing courts' analyses on the meaning of willful is necessary here. The real problem to be solved began with the district court's written findings. The district court correctly held that he was to make a factual determination of whether a "willful" violation of the Open Meeting Act occurred under the "holdings of Frazier...." After that pronouncement, however, the trial court did not delineate the test announced in Frazier and did not apply the facts to that test. Without more specific findings, no appellate court can determine what the trial court decided in this case. Was the trial court considering that the Board representative, who knew or should have known the Act's requirements, violated the Act with blatant or deliberate disregard of the law? If so, what facts that the trial court lists in the findings helped him reach that result? Or was the trial court applying only a portion of the Frazier test? Or did it misunderstand the test completely? We do not know.
Â¶6 I would vacate the Court of Civil Appeals opinion and remand the case back to the trial level for the district judge to determine under Frazier what facts support a finding of a willful violation.